1    STEVEN A. MARENBERG (#101033)
      stevenmarenberg@paulhastings.com
2    PAUL HASTINGS LLP
      1999 Avenue of the Stars, 27th Floor
3    Los Angeles, CA 90067
      Telephone: (310) 620-5710
4

5    RYAN P. PHAIR (*admitted pro hac vice*)
      ryanphair@paulhastings.com
      PAUL HASTINGS LLP
6    2050 M. Street NW
      Washington, DC 20036
7    Telephone: (202) 551-1751

8    Attorneys for Defendant
      UBISOFT, INC.
9

10

11               UNITED STATES DISTRICT COURT

12             EASTERN DISTRICT OF CALIFORNIA

13

14

| | |
|---|---|
| MATTHEW CASSELL and ALAN LIU, individually and on behalf of all others similarly situated, | CASE NO. 2:24-cv-03058-DAD-CSK |
| Plaintiffs, | **DEFENDANT UBISOFT, INC.'S MOTION TO DISMISS** |
| v. | Judge: Hon. Dale A. Drozd<br>Date: June 17, 2025<br>Time: 1:30 p.m.<br>Courtroom: 4, 15th Floor |
| UBISOFT ENTERTAINMENT S.A. and UBISOFT, INC. | Action Filed: November 4, 2024 |
| Defendants. | <u>JURY TRIAL DEMANDED</u> |

1

## NOTICE OF MOTION AND MOTION

2      **PLEASE TAKE NOTICE** that on Tuesday, June 17, 2025, at 1:30 p.m., in the above-

3   captioned Court, at Courtroom 4 on the 15th Floor of the Robert T. Matsui United States

4   Courthouse, located at 501 I Street, Sacramento, California, 95814, Defendant Ubisoft, Inc. will

5   and hereby does move the Court for an order dismissing Plaintiffs' Complaint (ECF No. 1) in its

6   entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

7      This Motion is based on this Notice of Motion and Motion, the accompanying

8   Memorandum of Points and Authorities, the pleadings and papers on file in this action, any matters

9   of which the Court may take judicial notice, any other matter that the Court may properly consider,

10  and such evidence and argument as may be presented at or before the hearing on this Motion.

11     This Motion is made following conference of counsel pursuant to Your Honor's Standing

12  Order in Civil Cases. Specifically, the parties conferred on February 25, 2025, to discuss the

13  substance of this Motion and any resolution. Having been unable to reach agreement on substantive

14  matters, Defendant Ubisoft, Inc. hereby files this Notice of Motion and Motion along with the

15  accompanying Memorandum of Points and Authorities.

16

17  DATED:  February 25, 2025                    Respectfully submitted,

18

19

20                                             By:  /s/ Steven A. Marenberg

21                                               STEVEN A. MARENBERG

22                                               Attorney for Defendant
                                                 UBISOFT, INC.

23

24

25

26

27

28

- 1 -

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

FACTUAL BACKGROUND .............................................................................................. 1

ARGUMENT .................................................................................................................. 3

I.    Legal Standards ................................................................................................ 3

II.    All Of Plaintiffs' Claims Are Time-Barred Because They Accrued When Plaintiffs Purchased *The Crew* Over Four Years Prior To The Filing Of The Complaint. ..................................................................................................... 4

    A.    Plaintiffs' CLRA, FAL, And UCL Claims Were Filed Outside The Applicable Limitations Periods. .......................................................... 5

    B.    Plaintiffs Fail To Plausibly Excuse Their Untimely Fraud Claims. ........... 7

    C.    Plaintiffs' Breach Of Warranty Claims Are Similarly Barred. ................. 8

    D.    Plaintiffs Fail To Plausibly Allege Their Inability To Discover. ............... 9

III.    Plaintiffs Lack Statutory And Article III Standing To Challenge Ubisoft's Sunsetting Of *The Crew*. .............................................................................. 10

    A.    Plaintiffs Fail To Adequately Allege That They Would Not Have Made Their Purchases But For The Alleged Representation Or Omission. ..................................................................................... 11

    B.    Plaintiffs Do Not Allege A Cognizable Injury. ................................... 13

IV.    Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim. ............. 14

    A.    Plaintiffs Do Not Plausibly Allege A Violation Of The CLRA, FAL, Or UCL Because They Do Not Allege An Actionable Omission, Misrepresentation, Or False Or Misleading Statement. ......... 14

    B.    Plaintiffs' Failure To Allege An Actionable Omission Or Misrepresentation, Justifiable Reliance And Damages Is Fatal To Their Fraud-Based Claims. ................................................................ 21

    C.    Plaintiffs Do Not Plausibly Allege A Breach of Express Or Implied Warranties. ....................................................................... 22

CONCLUSION ............................................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                                    **Page(s)**

3
4
*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*
   No. 2:17-CV-01515, 2020 WL 3893395 (E.D. Cal. July 10, 2020) .....................................20

5
*Anderson v. Apple Inc.*
   500 F. Supp. 3d 993 (N.D. Cal. 2020)...............................................................................11

6
7
*Andino v. Apple*
   No. 20-cv-1628, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ...........................................15

8
9
*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)........................................................................................................4

10
*Bassett v. Elec. Arts Inc.*
   No. 13-CV-04208, 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) ..........................................2

11
12
*Baxter v. State Teachers' Ret. Sys.*
   18 Cal. App. 5th 340 (2017) ............................................................................................7

13
14
*Beaver v. Tarsadia Hotels*
   816 F.3d 1170 (9th Cir. 2016)..........................................................................................5

15
*Becerra v. Dr Pepper/Seven Up, Inc.*
   945 F.3d 1225 (9th Cir. 2019)........................................................................................20

16
17
*Brown v. Madison Reed, Inc.*
   622 F. Supp. 3d 786 (N.D. Cal. 2022)...........................................................................5, 6

18
19
*Butts v. Cibo Vita, Inc.*
   No. 2:22-CV-00644, 2023 WL 2588012 (E.D. Cal. Mar. 20, 2023) ...................................22

20
*Cadlo v. Owens-Ill., Inc.*
   125 Cal. App. 4th 513 (2004) ....................................................................................11, 21

21
22
*Cansino v. Bank of Am.*
   224 Cal. App. 4th 1462 (2014)..........................................................................................7

23
24
*Castillo v. Prime Hydration LLC*
   No. 23-cv-3885, 2024 WL 4133815 (N.D. Cal. Sept. 9, 2024)...........................................18

25
*Clark v. LG Elecs. U.S.A., Inc*
   No. 13-cv-485, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013)............................................24

26
27
*Clemens v. DaimlerChrysler Corp.*
   534 F.3d 1017 (9th Cir. 2008).....................................................................................9, 25

28

- ii -

*Condrashoff v. Gen. Motors LLC*
    No. 2:24-CV-00108, 2024 WL 2399645 (E.D. Cal. May 23, 2024)..............................20, 21

*Cousins v. Lockyer*
    568 F.3d 1063 (9th Cir. 2009)...............................................................................................4

*Cream v. N. Leasing Sys., Inc.*
    No. 15-CV-01208, 2015 WL 4606463 (N.D. Cal. July 31, 2015).........................................21

*Cullen v. Netflix, Inc.*
    No. 5:11-cv-01199, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013)..........................................18

*Datel Hldgs. Ltd. v. Microsoft Corp.*
    712 F. Supp. 2d 974 (N.D. Cal. 2010)...................................................................................2

*Davis v. Angelcare USA, LLC*
    727 F. Supp. 3d 99 (D. Conn. 2024)....................................................................................11

*Disney Enters., Inc. v. Redbox Automated Retail, LLC*
    336 F. Supp. 3d 1146 (C.D. Cal. 2018) ...............................................................................19

*Ebner v. Fresh, Inc.*
    838 F.3d 958 (9th Cir. 2016) ...............................................................................................15

*E–Fab, Inc. v. Accounts., Inc. Servs.*
    153 Cal. App. 4th 1308 (2007)..............................................................................................9

*Effinger v. Ancient Organics LLC*
    657 F. Supp. 3d 1290 (N.D. Cal. 2023) ...............................................................................15

*Eidmann v. Walgreen Co.*
    522 F. Supp. 3d 634 (N.D. Cal. 2021) ...........................................................................15, 20

*Farley v. GameStop Corp.*
    No. 12-cv-4734, 2013 WL 4042434 (D.N.J. Aug. 7, 2013)...........................................16, 22

*In re Ferrero Litig.*
    794 F. Supp. 2d 1107 (S.D. Cal. 2011).................................................................................11

*Ferris v. Ford Motor Co.*
    No. 18-cv-03216, 2019 WL 1100376 (N.D. Cal. Mar. 8, 2019) ............................................8

*Fierro v. Cap. One, N.A.*
    656 F. Supp. 3d 1121 (S.D. Cal. 2023).................................................................................14

*Flores v. Gain Cap. Grp., LLC*
    No. 17-7873, 2018 WL 6133644 (C.D. Cal. June 20, 2018).................................................21

*Galvez v. Ford Motor Co.*
    No. 17-cv-2250, 2018 WL 4700001 (E.D. Cal. Sept. 30, 2018) ............................................5

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS

CASE NO. 2:24-cv-03058-DAD-CSK

*Gamez v. Toyota Motor Sales, U.S.A., Inc.*
  No. 23-CV-01464, 2024 WL 86320 (E.D. Cal. Jan. 8, 2024) ...............................................25

*Garcia v. Gen. Motors LLC*
  No. 18-cv-1313, 2018 WL 6460196 (E.D. Cal. Dec. 10, 2018) ........................................5, 8

*Garcia v. Sony Comput. Entm't Am., LLC*
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..........................................................................16

*Garza v. Spectrum Brands Pet LLC*
  No. 1:24-CV-00012, 2024 WL 5202472 (E.D. Cal. Dec. 23, 2024) ....................................2

*Glaski v. Bank of Am., N.A.*
  218 Cal. App. 4th 1079 (2013)...........................................................................................12

*Gomez v. Medtronic PLC*
  No. 1:18-CV-01296, 2018 WL 5603609 (E.D. Cal. Oct. 29, 2018) ....................................24

*Hadley v. Kellogg Sales Co.*
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) .............................................................................18

*Harris v. LSP Prods. Grp., Inc.*
  No. 2:18-cv-02973, 2021 WL 2682045 (E.D. Cal. June 30, 2021) ......................................8

*Harris v. McDonald's Corp.*
  No. 20-cv-06533, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) .......................................18

*Herremans v. BMW of N. Am., LLC*
  No. 14-cv-2363, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ..............................................6

*Kamlade v. LEO Pharma Inc.*
  No. 1:21-CV-00522, 2022 WL 358429 (E.D. Cal. Feb. 7, 2022)........................................23

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009).............................................................................................4

*Kerkorian v. Samsung Elecs. Am., Inc.*
  No. 1:18-CV-00870, 2021 WL 5399449 (E.D. Cal. Nov. 18, 2021) ..................................17

*Klein v. Ljubljana Inter Auto d.o.o.*
  No. 20-cv-10079, 2022 WL 16859589 (C.D. Cal. Aug. 2, 2022) .........................................7

*Kranich v. Girardi*
  No. 16-cv-1209, 2016 WL 11772429 (C.D. Cal. Aug. 8, 2016) ...........................................7

*Johnson v. Mitsubishi Digital Elecs. Am.*
  365 F. App'x 830 (9th Cir. 2010).......................................................................................13

*La Barbera v. Ole Mexican Foods Inc.*
  No. CV-20-2324, 2023 WL 4162348 (C.D. Cal. May 18, 2023) ....................................15, 19

*Langan v. United Servs. Auto. Ass'n*
69 F. Supp. 3d 965 (N.D. Cal. 2014) ............................................................................. 14

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014) ........................................................................................ 3

*Leong v. Square Enix of Am. Hldgs., Inc.*
No. 09-cv-4484, 2010 WL 11519184 (C.D. Cal. Jan. 20, 2010) ................................... 12, 22

*Leong v. Square Enix of Am. Hldgs., Inc.*
No. 09-cv-4484, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ................................... *passim*

*Lloyd v. Facebook, Inc.*
No. 21-CV-10075, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .................................... 2

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ................................................................................................ 10, 11

*Mai v. Supercell Oy*
648 F. Supp. 3d 1130 (N.D. Cal. 2023) ....................................................................... 2, 13

*McMahon v. Take-Two Interactive Software, Inc.*
No. 13-cv-2032, 2017 WL 11681048 (C.D. Cal. Apr. 19, 2017) ................................... 12, 19

*Minkler v. Apple, Inc.*
65 F. Supp. 3d 810 (N.D. Cal. 2014) .................................................................... 23, 24, 25

*Moore v. Trader Joe's Co.*
4 F.4th 874 (9th Cir. 2021) ................................................................ 15, 16, 17, 19

*Morgan v. Harmonix Music Sys., Inc.*
No. 08-5211, 2009 WL 2031765 (N.D. Cal. July 7, 2009) ............................................ 16, 22

*Mui Ho v. Toyota Motor Corp.*
931 F. Supp. 2d 987 (N.D. Cal. 2013) .......................................................................... 14

*Nazemi v. Specialized Loan Servicing, LLC*
637 F. Supp. 3d 856 (C.D. Cal. 2022) .......................................................................... 14

*In re Nexus 6P Prod. Liab. Litig.*
293 F. Supp. 3d 888 (N.D. Cal. 2018) .......................................................................... 22

*Nguyen v. Nissan N. Am., Inc.*
487 F. Supp. 3d 845 (N.D. Cal. 2020) .......................................................................... 8

*Norgart v. Upjohn Co.*
21 Cal. 4th 383 (1999) ................................................................................................ 9

*Opperman v. Path*
84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) ..................................................................... 2

*Panelli v. Target Corp.*
No. 24-CV-01218, 2024 WL 4596412 (S.D. Cal. Oct. 28, 2024) ........................................ 20

*Plumlee v. Pfizer, Inc.*
No. 13-cv-414, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ....................................... 5, 6

*Punian v. Gillette Co.*
No. 14-CV-05028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ..................................... 19

*Robinson Helicopter Co. v. Dana Corp.*
34 Cal. 4th 979 (2004) ........................................................................................... 21

*Robles v. GOJO Indus., Inc.*
No. 22-55627, 2023 WL 4946601 (9th Cir. 2023) ................................................... 15

*Rosal v. First Fed. Bank of Cal.*
671 F. Supp. 2d 1111 (N.D. Cal. 2009) .................................................................... 7

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) .................................................................................. 3

*Salameh v. Tarsadia Hotel*
726 F.3d 1124 (9th Cir. 2013) .................................................................................. 4

*Schuck v. Fed. Nat'l. Mortg. Ass'n*
No. 11-cv-691, 2011 WL 2580552 (E.D. Cal. June 28, 2011) .................................... 12

*Shahbaz v. Arista Networks, Inc.*
No. 2:24-CV-00431, 2024 WL 4368253 (E.D. Cal. Oct. 1, 2024) ............................... 14, 15

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .............................................................................................. 10

*Stewart v. Electrolux Home Prods., Inc.*
304 F. Supp. 3d 894 (E.D. Cal. 2018) ..................................................................... 11

*Taylor v. Apple, Inc.*
No. 20-cv-03906, 2021 WL 11559513 (N.D. Cal. Mar. 19, 2021) ................................ 14

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*
594 F.2d 730, 733 (9th Cir. 1979) ............................................................................ 3

*Tomek v. Apple, Inc.*
No. 11-cv-02700, 2012 WL 2857035 (E.D. Cal. July 11, 2012) ................................. 18

*Turner v. City & County of San Francisco*
788 F.3d 1206 (9th Cir. 2015) .................................................................................. 4

*Velazquez v. Gen. Motors LLC*
No. 24-cv-1519, 2024 WL 3617486 (E.D. Cal. Aug. 1, 2024) .................................... 4

- vi -

*Vera v. REL-BC, LLC*
    66 Cal. App. 5th 57 (2021) ...........................................................................7

*Watkins v. MGA Ent. Inc.*
    550 F. Supp. 3d 815 (N.D. Cal. 2021)......................................................11

*West v. JPMorgan Chase Bank, N.A.*
    214 Cal. App. 4th 780 (2013) .....................................................................4

*Williams v. Gerber Prods. Co.*
    552 F.3d 934 (9th Cir. 2008) ....................................................................18

*Wilson v. Hewlett-Packard Co.*
    668 F.3d 1136 (9th Cir. 2012)....................................................................15

*Yates v. Aurora Loan Servs., LLC*
    No. C–11–00695, 2011 WL 2429376 (N.D. Cal. June 13, 2011).........................21

*Yumul v. Smart Balance, Inc.*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................5

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................3, 12, 14, 25

Fed. R. Civ. P. 12(b)(6)....................................................................*passim*

**Statutes**

California False Advertising Law, Cal. Bus. & Prof. Code § 17500..................*passim*

Cal. Com. Code §§ 2314, 2316..................................................... 23, 24

California Legal Remedies Act, Cal. Civ. Code § 1770 *et seq.* ..........................*passim*

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* .....................*passim*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    The gravamen of Plaintiffs' Complaint (ECF No. 1) is that Ubisoft, Inc. allegedly misled

3  purchasers of its video game *The Crew* into believing they were purchasing unfettered ownership

4  rights in the game, rather than a limited license to access the game. But the reality is that consumers

5  received the benefit of their bargain and were explicitly notified, at the time of purchase, that they

6  were purchasing a license. Frustrated with Ubisoft's recent decision to retire the game following a

7  notice period delineated on the product's packaging, Plaintiffs apply a kitchen sink approach on

8  behalf of a putative class of nationwide customers, alleging eight causes of action including

9  violations of California's False Advertising Law, Unfair Competition Law, and Consumer Legal

10  Remedies Act, as well as common law fraud and breach of warranty claims.

11    As a preliminary matter, all of Plaintiffs' claims are time-barred because Plaintiffs

12  purchased *The Crew*—and thus their claims accrued—beyond the applicable limitations periods.

13  Plaintiffs' claims also fail across the board because the Complaint does not plausibly allege actual

14  reliance or injury: Plaintiffs received access to *The Crew* entirely consistent with what was

15  marketed to them. This undermines any attempt to establish Article III or statutory standing.

16  Finally, and critically, Plaintiffs fail to state a plausible claim under any of their eight causes of

17  action, given the explicit warnings on *The Crew*'s packaging that Plaintiffs were obtaining a limited

18  license to access the game. Plaintiffs' decision not to heed those warnings does not amount to an

19  actionable misrepresentation or omission. Plaintiffs obtained access to *The Crew* in line with what

20  was advertised to them, and their claims are accordingly subject to dismissal.

21

**FACTUAL BACKGROUND**

22    *The Crew* is a popular racing video game released in 2014, featuring an open-world

23  environment for players to drive across a contiguous re-creation of the United States. *See* Compl.

24  ¶ 19. Sequels to *The Crew* include *The Crew 2*, released in 2018, and *The Crew Motorfest*, released

25  in 2023. *Id.* ¶ 22.[1] Plaintiff Alan Liu purchased a physical copy of *The Crew* "sometime shortly

26  after November 22, 2018, likely as part of a Black Friday or Cyber Monday sale." *Id.* ¶ 8. Plaintiff

27  Matthew Cassell purchased a physical copy of *The Crew* "in early 2020." *Id.* ¶ 6.

28

---

[1] The claims in the Complaint concern the first title in *The Crew* franchise, released in 2014.

The Complaint includes images of *The Crew*'s packaging, including one Xbox package and one PlayStation package, *id.* Figs. 6-7, but does not specify which version of *The Crew* the Plaintiffs purchased. Ubisoft has attached a digital version of the front and back covers of this packaging as Exhibit A to the Declaration of Brigitte Khoury.[2] The Xbox and PlayStation packaging contain a clear and conspicuous notice—in all capital letters—that "UBISOFT MAY CANCEL ACCESS TO ONE OR MORE SPECIFIC ONLINE FEATURES UPON A 30-DAY PRIOR NOTICE." Ex. A. The PlayStation packaging's list of game features includes "ONLINE PLAY (REQUIRED)," and again warns on the front on the package: "ONLINE CONNECTION REQUIRED." *Id.* The Xbox package contains a similar warning that *The Crew* "REQUIRES INTERNET." *Id.* In other words, both packages warn (1) that Ubisoft may terminate online connectivity upon prior 30-day notice and (2) that playing *The Crew* requires online connectivity. The PlayStation package also states that the "Software [is] *subject to license* (see terms at ubi.com)." *Id.* (emphasis added). Ubisoft has attached the Terms of Use that were in effect at the time of Plaintiffs' alleged purchases as Exhibit B to the Declaration of Brigitte Khoury.[3]

---

[2] Courts regularly take judicial notice of product labels when those product labels form the basis of the relevant causes of action. *See, e.g.*, *Garza v. Spectrum Brands Pet LLC*, No. 1:24-CV-00012, 2024 WL 5202472, at *1 (E.D. Cal. Dec. 23, 2024) (taking judicial notice of "the entire package imagery underlying the alleged product misrepresentation" in false advertising case "[b]ecause Plaintiff incorporated by reference the front label in her complaint").

[3] California federal courts take judicial notice of video game distributors' terms of use where a plaintiff's claims are "governed by" those terms and "necessarily dependent on their access and use of" the video game at issue. *See Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1138 n.3 (N.D. Cal. 2023). Ubisoft's Terms of Use were publicly available on its website—as advertised on *The Crew*'s packaging—and Plaintiffs' claims necessarily depend on their contents to the extent those terms contain clear warnings that Plaintiffs were obtaining only limited licenses to access *The Crew* (which they do). Ubisoft therefore requests that the Court consider its then-operative Terms of Use in assessing this Motion. *See, e.g.*, *Lloyd v. Facebook, Inc.*, No. 21-CV-10075, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022) (taking judicial notice of terms "not reference[d]" in complaint but "relevant to Plaintiff's claims" because they "form[ed] the basis of Plaintiff's claims and should therefore be 'considered part of the pleading'") (citation omitted); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (taking judicial notice of terms "relevant to Plaintiffs' UCL and FAL claims" and collecting cases); *Bassett v. Elec. Arts Inc.*, No. 13-CV-04208, 2015 WL 1298644, at *6 (E.D.N.Y. Feb. 9, 2015) (considering terms associated with plaintiff's CLRA, FAL, UCL, and breach of warranty claims in part because the "back of the video game packaging refer[red] to" defendant's terms of service "and identifie[d] a web site where the terms may be reviewed[]"); *Datel Hldgs. Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010)

Consistent with the notice period set forth on its product packaging, Ubisoft announced its intention to sunset *The Crew* in December 2023, and disabled *The Crew*'s servers in March 2024. Compl. ¶ 26. After Ubisoft shut down *The Crew*'s servers, "Plaintiff Liu wished to continue playing the video game. Therefore, he purchased a spin-off game of *The Crew* also published by Defendants." *Id.* ¶ 8. Unsatisfied with Ubisoft's decision to shut down the ten-year-old video game pursuant to the warnings unambiguously included on its packaging, Plaintiffs filed this putative class action purporting to represent a nationwide class and a California subclass of purchasers bringing claims under the California Legal Remedies Act ("CLRA"), the California False Advertising Law ("FAL"), and the California Unfair Competition Law ("UCL"), as well as for common law fraud and breach of warranty. *See id.* ¶¶ 79-151. In the Complaint, Plaintiffs allege that they purchased physical copies of *The Crew* under the belief that they were obtaining unfettered access to the game in perpetuity. *Id.* ¶¶ 7-8. Plaintiffs also take issue with the fact that Ubisoft did not offer to create an "offline, single-player option of the Game, otherwise known as a 'patch,'" when it shut down *The Crew*'s servers in March 2024. *See id.* ¶ 28.

## ARGUMENT

### I.  Legal Standards

A motion to dismiss under Rule 12(b)(1) "may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citations omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter[.]" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).

---

(taking judicial notice of terms associated with Xbox accessory purchase "because Plaintiff's complaint depends, at least in part, on the contents of the documents") (citation omitted).

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS

CASE NO. 2:24-cv-03058-DAD-CSK

"In assessing whether a party has stated a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6), "a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" *Turner v. City & County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks omitted) (citation omitted).

Plaintiffs carry a heavier burden when their claims sound in fraud. *See Velazquez v. Gen. Motors LLC*, No. 24-cv-1519, 2024 WL 3617486, at *3 (E.D. Cal. Aug. 1, 2024). Under Federal Rule of Civil Procedure 9(b), Plaintiffs must "state with particularity the circumstances constituting fraud[.]" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). This specificity requirement means a plaintiff "must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 793 (2013) (citation omitted). The plaintiff also must explain "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124.

## II. All of Plaintiffs' Claims Are Time-Barred Because They Accrued When Plaintiffs Purchased the Crew Over Four Years Prior to the Filing of the Complaint.

As an initial matter, Plaintiffs' lawsuit is untimely: it is evident on the face of the Complaint that the relevant statutes of limitations for Plaintiffs' claims have lapsed, even under the most forgiving four-year limitations window. Plaintiffs' claims, which all arise from their purchase of

- 4 -

*The Crew* video game, accrued when they *purchased* their copies of *The Crew*. *See Leong v. Square Enix of Am. Hldgs., Inc.* ("*Leong II*"), No. 09-cv-4484, 2010 WL 1641364, at *9-10 (C.D. Cal. Apr. 20, 2010) (finding claims under CLRA and FAL for alleged omission regarding video game purchase accrued at time of purchase and were barred by statute of limitations), *aff'd*, 462 F. App'x 688 (9th Cir. 2011); *Garcia v. Gen. Motors LLC*, No. 18-cv-1313, 2018 WL 6460196, at *7 (E.D. Cal. Dec. 10, 2018) (finding fraud-based claims barred by statutes of limitations because claims accrued at time of purchase). And plaintiffs do not—because they cannot—adequately plead that they were unable to discover their claims until a later date. As such, Plaintiffs' claims are procedurally and incurably flawed and must be dismissed with prejudice.

> **A.    Plaintiffs' CLRA, FAL, and UCL Claims Were Filed Outside the Applicable Limitations Periods.**

Plaintiffs' statutory claims are all barred as untimely. "CLRA and FAL claims are subject to a three-year statute of limitations and UCL claims are subject to a four-year statute of limitations." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) (citing Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208; Cal. Civ. Proc. Code § 338(a)). "Because these three statutes 'proscribe misleading, false, or otherwise decept[ive] practices or statements in transactions for the sale or lease of goods to consumers,' a cause of action under each 'accrues when a defendant misrepresents or omits material information regarding a product or service and *a consumer makes a purchase* as a result of such deceptive practices.'" *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 799 (N.D. Cal. 2022) (emphasis added) (quoting *Plumlee v. Pfizer, Inc.*, No. 13-cv-414, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014)), *aff'd*, No. 22-16415, 2023 WL 8613496 (9th Cir. Dec. 13, 2023); *see also Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016) (explaining that a cause of action under the UCL is similarly "governed by common law accrual rules," which "provide[] that a cause of action ordinarily accrues when each of the elements of the cause of action (wrongdoing, causation, and harm) has been satisfied") (alterations in original). Put simply, CLRA, FAL, and UCL claims accrue when a plaintiff purchases the allegedly mislabeled product. *See Plumlee*, 2014 WL 695024, at *7; *see also Galvez v. Ford Motor Co.*, No.

1    17-cv-2250, 2018 WL 4700001, at *4 (E.D. Cal. Sept. 30, 2018) (collecting cases for proposition

2    that "CLRA claims in consumer cases generally accrue on the date of purchase[]").

3         Taking Plaintiffs' allegations at face value, Plaintiffs claim they were deceived by alleged

4    omissions and misrepresentations on *The Crew*'s packaging that were either visible or not included

5    in the packaging upon purchase. Plaintiffs' theories thus center around their understanding—or,

6    rather, their misperceptions—*at the time of purchase. See* Compl. ¶ 3 ("Plaintiffs *bought* physical

7    disks storing the Game data, which reasonably made them believe that they could input that disk

8    into their computer or game console and play the game whenever they wanted.") (emphasis added);

9    ¶ 6 ("When Plaintiff Cassell purchased the Product, he was under the impression that he was paying

10   to own and possess the video game, *The Crew*, instead of paying for a limited license to use the

11   Game."); ¶ 8 (same as to Plaintiff Liu); ¶ 149 (alleging Plaintiffs were "harmed because they would

12   not have purchased the Product, or would have paid substantially less for it," if they knew they

13   were obtaining only limited licenses). By Plaintiffs' own allegations, their claims accrued on the

14   dates they made their respective purchases: "Plaintiff [ ] reasonably relied on these representations

15   and omissions that were part of the basis of the bargain in that he would not have purchased the

16   Product or would not have purchased it on the same terms, if the true facts had been known." *Id.*

17   ¶¶ 7, 9; *see Brown*, 622 F. Supp. 3d at 799 (claims accrued at time of purchase where plaintiff

18   "makes a purchase as a result of such deceptive practices" and complaint alleged "that Brown

19   purchased the products after relying on Madison Reed's statements").

20        Plaintiff Cassell alleges he purchased his copy of *The Crew* in "early 2020" and Plaintiff

21   Liu alleges he purchased his copy "shortly after November 22, 2018." Compl. ¶¶ 6, 8. They did not

22   file the instant lawsuit until November 2024, over four years after Plaintiff Cassell purchased the

23   game and almost six years after Plaintiff Liu's purchase. Plaintiffs' CLRA, FAL, and UCL claims

24   are accordingly time-barred. *See Herremans v. BMW of N. Am., LLC*, No. 14-cv-2363, 2014 WL

25   5017843, at *3 (C.D. Cal. Oct. 3, 2014) ("Under the CLRA, the limitations period generally begins

26   to run on the date the allegedly wrongful act was committed—here, the date [plaintiffs] purchased

27   [the product].");  *Plumlee*, 2014 WL 695024, at *7 (same); *Leong II*, 2010 WL 1641364, at *9-10.

28

- 6 -

**B.      Plaintiffs Fail to Plausibly Excuse Their Untimely Fraud Claims.**

Although a different limitations period applies to Plaintiffs' common law fraud claims, the timeliness issue persists. The statute of limitations for fraud claims under California law is three years and accrues when the plaintiff "has reason to discover[] the cause of action." *Klein v. Ljubljana Inter Auto d.o.o.*, No. 20-cv-10079, 2022 WL 16859589, at *8 (C.D. Cal. Aug. 2, 2022). A fraud claim "accrue[s] even without actual knowledge if a plaintiff knows facts that should raise suspicion and trigger a further investigation[]" of the allegedly fraudulent conduct. *Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (2021). Thus, "a plaintiff must affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baxter v. State Teachers' Ret. Sys.*, 18 Cal. App. 5th 340, 359 (2017) (alterations omitted) (citation omitted); *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1131 (N.D. Cal. 2009) ("Plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation."). Conclusory allegations will not suffice. *Rosal*, 671 F. Supp. 2d at 1131. Instead, the "discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014).

Plaintiffs were on notice of their claims at the time of their purchases of *The Crew* because the packaging provided clear and conspicuous notice that their access could be revoked and that the software was "subject to license." Compl. ¶ 57, Figs. 6-7. While Plaintiffs allege generally that Ubisoft had "exclusive knowledge" of the alleged omissions and misrepresentations, *id.* ¶¶ 62, 85, 118, 128, 136, the product packaging belies this allegation, as further explained below. But perhaps more importantly, the Complaint contains *no* substantive allegations concerning Plaintiffs' knowledge or awareness of their claims. *See Cansino*, 224 Cal. App. 4th at 1473 (conclusory allegations that fail to explain "how plaintiffs made the discovery or how it demonstrates that [there] was a misrepresentation" are insufficient to establish timeliness); *see also Kranich v. Girardi*, No. 16-cv-1209, 2016 WL 11772429, at *7 (C.D. Cal. Aug. 8, 2016) (dismissing fraud-

- 7 -

1  based claim as time-barred where "plaintiff d[id] not add a single factual allegation to support his

2  theory of either delayed discovery or fraudulent concealment. Rather, plaintiff has merely added a

3  number of conclusory statements regarding his inability to have made earlier discovery[]"), *aff'd*,

4  720 F. App'x 870 (9th Cir. 2018); *Garcia*, 2018 WL 6460196, at *7 (dismissing fraud-based claims

5  where "[p]laintiffs did not sufficiently plead that they were not at fault for their failure to discover

6  the defect, or had no actual or presumptive knowledge of facts sufficient to put them on inquiry[]").

7  Because the Complaint does not adequately allege that Plaintiffs were not or should not have been

8  on notice of their claims at the time of purchase, the claims must be dismissed.

9     **C.**  **Plaintiffs' Breach of Warranty Claims Are Similarly Barred.**

10     Plaintiffs' breach of warranty claims are subject to a four-year statute of limitation, and

11  suffer the same fate as the statutory and fraud-based claims. *See Brown*, 622 F. Supp. 3d at 799. "A

12  cause of action" for breach of express warranty "accrues when [the] breach occurs, [i.e. 'when

13  tender of delivery is made'] 'regardless of the aggrieved party's lack of knowledge of the breach.'"

14  Cal. Com. Code § 2725(2). The only exception is where "a warranty explicitly extends to future

15  performance" and "discovery of the breach must await the time of such performance[.]" *Id.*

16  Similarly, "a claim for breach of implied warranty accrues, and, therefore, the statute of limitations

17  begins to run, upon tender of delivery." *Ferris v. Ford Motor Co.*, No. 18-cv-03216, 2019 WL

18  1100376, at *2 (N.D. Cal. Mar. 8, 2019) (citation omitted). The statute plainly provides that accrual

19  begins on tender of delivery, and California courts have interpreted this consistently, explaining

20  that breach of warranty claims accrue "at the time of purchase." *Nguyen v. Nissan N. Am., Inc.*, 487

21  F. Supp. 3d 845, 855 (N.D. Cal. 2020); *see also Harris v. LSP Prods. Grp.*, No. 2:18-cv-02973,

22  2021 WL 2682045, at *6-7 (E.D. Cal. June 30, 2021) (holding that breach of warranty claims

23  accrued at the time of installation and plaintiff failed to establish any applicable exception).

24     Plaintiffs' purchases occurred in 2018 and early 2020, and there is no allegation that there

25  was an extension of the warranty to future performance. As such, Plaintiffs' warranty claims

26  accrued at the time of purchase and are accordingly time-barred and must be dismissed.

27

28

- 8 -

**D. Plaintiffs Fail to Plausibly Allege Their Inability to Discover.**

Finally, Plaintiffs have not adequately alleged their inability to discover the misconduct sooner, as required to toll the statutes of limitations under the delayed discovery rule. "In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *E–Fab, Inc. v. Accounts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007). The burden is on the plaintiff to show diligence, and conclusory allegations will not suffice. *Id.*

Plaintiffs make no attempt to meet their burden to demonstrate an inability to discover the alleged misconduct sooner. In fact, the Complaint makes clear on its face that any such allegations would be implausible because Plaintiffs had ample notice that they were obtaining limited licenses when purchasing *The Crew*. Both packages provided by Plaintiffs clearly denote—in all capital typeface—that Ubisoft may "CANCEL ACCESS TO ONE OR MORE SPECIFIC ONLINE FEATURES UPON A 30-DAY PRIOR NOTICE," and that online connectivity was "REQUIRED" to play the game, *see* Ex. A, thereby putting Plaintiffs on notice that they were obtaining revocable access to the game. Even more telling, the PlayStation package further stated that the "Software [is] *subject to license* (see terms at ubi.com)." *Id.* (emphasis added). Those Terms of Use then reiterated that Plaintiffs' purchases were subject to limited licenses. The very first Section was titled "Description of Services and *Limited License to Use Services*." Ex. B at 1 (emphasis added). The terms also stated that Ubisoft "RESERVE[S] THE RIGHT . . . TO TERMINATE *YOUR LICENSE FOR USE* OF THE GAMES AND SERVICES" in the event of a breach thereof. *Id.* at 12 (emphasis added). Additionally, the terms provide that Ubisoft "grants you a personal, non-transferable and *non-exclusive license* enabling you to use this UBISOFT Software solely for the purposes of use of the Services." *Id.* at 16. (emphasis added). Plaintiffs unquestionably had reason to know that they were purchasing limited licenses to access *The Crew* given the packaging language and

- 9 -

1  corresponding Terms of Use, and any omissions or representations by Ubisoft to the contrary could

2  therefore have been discovered at the time of sale. The Complaint both (1) fails to plausibly allege

3  *any* discovery-related facts to allow this Court to substantiate that the alleged omissions or

4  misrepresentations could not have been discovered sooner, and (2) features packaging

5  demonstrating that Plaintiffs easily could have discovered that they were obtaining limited licenses.

6  Plaintiffs' claims are untimely.

7  A contrary finding is foreclosed by *Leong II*, which confronted a strikingly similar set of

8  facts. There, the plaintiffs alleged violations of the CLRA, FAL, and UCL against a video game

9  distributor "based on [] alleged deception at the point of sale" because the distributor allegedly

10  failed to inform purchasers that digital access to *Final Fantasy XI Online* could be revoked via a

11  forfeiture clause within the distributor's terms and conditions if users failed to pay a subscription

12  fee for more than three months. *See* 2010 WL 1641364, at *3. The plaintiffs purchased *Final*

13  *Fantasy XI Online* in 2005, yet argued that their claims did not accrue until 2009—when their game

14  accounts were forfeited. *See id.* at *9. The Central District of California and subsequently the Ninth

15  Circuit rejected this argument. They held that the plaintiffs' claims accrued *at the time of purchase*

16  because the plaintiffs "had reason [t]o discover the forfeiture clause" at the time of purchase,

17  through the game's packaging, which included references to the terms and conditions. *Id.*

18  So too here: Plaintiffs had every opportunity to discover that they were obtaining limited

19  licenses when they purchased *The Crew*, and their failure to file their Complaint within the

20  applicable statutes of limitations is grounds for dismissal.

21  **III.  Plaintiffs Lack Statutory and Article III Standing to Challenge Ubisoft's Sunsetting**

22  **of *The Crew*.**

23  "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The

24  plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct

25  of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v.*

26  *Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

27  (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

28  legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

- 10 -

conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). As set forth below, "California courts have held that the statutory standing requirements" of the CLRA, FAL, and UCL "are more stringent than the federal Article III standing requirement." *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99, 142 (D. Conn. 2024) (citation omitted). The requirements for standing under California law and Article III are not met here.

### A. Plaintiffs Fail to Adequately Allege That They Would Not Have Made Their Purchases but for the Alleged Representation or Omission.

"In order to assert a claim under the UCL or FAL, a person must have 'suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition.'" *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011) (quoting Cal. Bus. & Prof. Code §§ 17204, 17535). "Therefore, actual reliance is required to have standing to sue under the UCL or FAL." *Id.* (citation omitted); *see also Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 905 n.5 (E.D. Cal. 2018) (requiring plaintiff to plead actual reliance under the UCL). "In addition, actual reliance is required to have standing to sue under the CLRA." *In re Ferrero Litig.*, 794 F. Supp. 2d at 1111. Actual and justifiable reliance is likewise required to establish standing for fraud-based and misrepresentation claims. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1005 (N.D. Cal. 2020) (collecting cases); *Cadlo v. Owens-Ill., Inc.*, 125 Cal. App. 4th 513, 519 (2004) ("In both causes of action [for fraud and misrepresentation], the plaintiff must plead that he or she actually relied on the misrepresentation."). "To plead reliance, a plaintiff must truthfully allege that she would not have bought the product but for the allegedly actionable misrepresentation or omission." *Watkins v. MGA Ent. Inc.*, 550 F. Supp. 3d 815, 834 (N.D. Cal. 2021) (internal quotation marks omitted).

There can be no doubt that Plaintiff Liu has pled himself out of court on the actual reliance element. Plaintiff Liu alleges that "[a]fter the product's servers were shut down by Defendants, [he] wished to continue playing the video game. Therefore, *he purchased a spin-off game of The Crew also published by Defendants*." Compl. ¶ 8 (emphasis added). Plaintiff Liu made this purchase with the knowledge that he was obtaining a license that Ubisoft could revoke at any time because Ubisoft had *just revoked his license* to *The Crew*. Actual reliance is implausible where a consumer's knowledge of an alleged omission or misrepresentation in connection with purchasing a video game

- 11 -

1  "would not have dissuaded [them] from buying the game." *Leong v. Square Enix of Am. Hldgs.,*

2  *Inc.* ("*Leong I*"), No. 09-cv-4484, 2010 WL 11519184, at *3 (C.D. Cal. Jan. 20, 2010). The *Leong*

3  *I* court dismissed a plaintiff's claims for this very reason. The plaintiff alleged that she would not

4  have purchased *Final Fantasy XI Online* but for the defendant's alleged failure to inform her that

5  the defendant "retain[ed] absolute control and ownership over the game data." *Id.* at *1. The court,

6  however, found this allegation implausible because the plaintiff also alleged repurchasing the game

7  *after* the defendant revoked her access. *Id.* at *4. According to the court, the plaintiff's second

8  purchase showed that knowledge of the alleged omission "would not have dissuaded [her] from

9  buying the game in the first place," which fatally undercut her actual reliance allegations. *Id.* at *3;

10  *see also Leong II*, 2010 WL 1641364, at *1 (dismissing CLRA, FAL, UCL, and fraud claims again

11  for failure to remediate pleading issues); *McMahon v. Take-Two Interactive Software, Inc.*, No. 13-

12  cv-2032, 2017 WL 11681048, at *3-4 (C.D. Cal. Apr. 19, 2017) (finding plaintiffs did not plausibly

13  allege they would have refrained from purchasing *Grand Theft Auto V* if not for the alleged

14  misrepresentation). Plaintiff Liu must likewise be dismissed for his failure to plausibly allege that

15  he would not have purchased *The Crew* with knowledge that he was obtaining only revocable

16  access, because he admits to later purchasing a *The Crew* game with that knowledge.

17      Plaintiff Cassell's actual reliance allegations fare no better. A plaintiff's "mere assertion of

18  reliance is insufficient" at the motion to dismiss stage. *See Schuck v. Fed. Nat'l. Mortg. Ass'n*, No.

19  11-cv-691, 2011 WL 2580552, at *5 (E.D. Cal. June 28, 2011) (citation omitted). Plaintiff Cassell's

20  reliance allegations amount to bare and conclusory allegations that merely recite the legal elements

21  of actual reliance. *See, e.g.*, Compl. ¶ 7 ("Plaintiff Cassell reasonably relied on these representations

22  and omissions that were part of the basis of the bargain in that he would not have purchased the

23  Product or would not have purchased it on the same terms, if the true facts had been known."); ¶

24  65 ("Plaintiffs and Class members viewed and relied on Defendants' omissions and

25  misrepresentations before purchasing the Product."). These conclusory allegations are owed no

26  deference, and he should be dismissed for failure to establish standing under Rule 12(b)(1). *See,*

27  *e.g.*, *Glaski v. Bank of Am., N.A.*, 218 Cal. App. 4th 1079, 1091 (2013) (finding insufficient

28  "conclusory allegation[s] of reliance" for fraud-based claims).

- 12 -

1

### B.    Plaintiffs Do Not Allege a Cognizable Injury.

Plaintiffs also have not plausibly alleged injury as required to establish standing, because the access they received to *The Crew* is entirely consistent with what Ubisoft marketed to them— specifically, with the representations on *The Crew*'s packaging and in Ubisoft's Terms of Use. Plaintiffs allege injury at the point of sale by virtue of their purchasing only a limited license to play *The Crew*, rather than full ownership and the unrestricted right to play the game in perpetuity. But their Complaint undercuts these allegations on its face. The packaging contains clear notices that Ubisoft could "CANCEL ACCESS" to aspects of the game that were "REQUIRED" to play, thus putting Plaintiffs on notice that they did not have unconditional access and ownership. *See* Compl. Figs. 6-7. The PlayStation package goes a step further, warning purchasers that access to *The Crew* is "subject to license (*see* terms at ubi.com)," *id.*, which terms explicitly informed Plaintiffs that they were obtaining a limited, revocable license. *See supra* p.9.

After making their purchases, Plaintiffs enjoyed access to *The Crew* for years before Ubisoft decided in late 2023 to retire and shut down the servers of the ten-year-old video game. Plaintiffs received the benefit of their bargain and cannot complain now that they were deceived simply because Ubisoft did not then create an offline version of the discontinued video game. *See* Compl. ¶¶ 28-30, 95. The Northern District of California decision in *Mai v. Supercell Oy* is instructive on this point. In *Mai*, the plaintiffs were allegedly harmed by a video game company's practice of inducing players to purchase "loot" boxes, which plaintiff alleged amounted to illegal gambling games. The court ultimately concluded that the plaintiffs lacked standing because they did "not allege a deficiency in the loot boxes or virtual currency that they received in exchange for their real-world currency, or in the loot boxes they received in exchange for their virtual currency." 648 F. Supp. 3d at 1134.[4] In other words, the plaintiffs failed to establish standing because their complaint made clear that "in fact, they received what they paid for." *Id.* at 1136; *see also Johnson v. Mitsubishi Digital Elecs. Am.*, 365 F. App'x 830, 832-83 (9th Cir. 2010) (dismissing UCL and

---

[4] The Ninth Circuit ruled that the dismissal should have been without prejudice, but otherwise affirmed the finding that plaintiffs failed to allege economic injury-in-fact for statutory standing purposes. *See Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024).

1  unjust enrichment claims for lack of standing because the plaintiff "got the benefit of his bargain"

2  in line with defendant's marketing); *Taylor v. Apple, Inc.*, No. 20-cv-03906, 2021 WL 11559513,

3  at *4-6 (N.D. Cal. Mar. 19, 2021) (dismissing UCL, CLRA, and unjust enrichment claims for lack

4  of standing because plaintiffs "obtained exactly what [they] paid for").

5      That Plaintiffs are dissatisfied with Ubisoft's decision to retire *The Crew* does not negate

6  the fact that it is evident on the face of the Complaint that Plaintiffs received exactly what was

7  advertised to them. Plaintiffs' claims must be dismissed for lack of standing under Rule 12(b)(1).

8  **IV.    Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim.**

9      **A.    Plaintiffs Do Not Plausibly Allege a Violation of the CLRA, FAL, or UCL
           Because They Do Not Allege an Actionable Omission, Misrepresentation, or
10          False or Misleading Statement.**

11      Putting aside the foregoing fatal threshold deficiencies, Plaintiffs also fail to plausibly allege

12  the required elements of a violation of the CLRA, FAL, or UCL. "The CLRA prohibits 'unfair

13  methods of competition and unfair or deceptive acts or practices.'" *Mui Ho v. Toyota Motor Corp.*,

14  931 F. Supp. 2d 987, 996 (N.D. Cal. 2013) (quoting Cal. Civ. Code § 1770). "To state a

15  misrepresentation [or omission] claim under the CLRA, 'a plaintiff must allege (1) a

16  misrepresentation [or omission]; (2) reliance on that misrepresentation [or omission]; and (3)

17  damages caused by that misrepresentation [or omission].'" *Fierro v. Cap. One, N.A.*, 656 F. Supp.

18  3d 1121, 1128 (S.D. Cal. 2023) (citation omitted). "The FAL" similarly "makes it unlawful for any

19  person or entity to disseminate any statement 'which is untrue or misleading, and which is known,

20  or which by the exercise of reasonable care should be known, to be untrue or misleading' in

21  connection with the sale of 'real or personal property' or 'services.'" *Langan v. United Servs. Auto.

22  Ass'n*, 69 F. Supp. 3d 965, 985 (N.D. Cal. 2014) (quoting Cal. Bus. & Prof. Code § 17500).

23      Additionally, the "UCL prohibits 'any unlawful, unfair or fraudulent business act or

24  practice.'" *Shahbaz v. Arista Networks, Inc.*, No. 2:24-CV-00431, 2024 WL 4368253, at *5 (E.D.

25  Cal. Oct. 1, 2024) (quoting Cal. Bus. & Prof. Code § 17200). "To state a claim under the

26  'fraudulent' prong of the UCL, Plaintiff[s] must allege that the conduct is likely to deceive members

27  of the public, which is evaluated from the vantage of a reasonable consumer." *Nazemi v. Specialized

28  Loan Servicing, LLC*, 637 F. Supp. 3d 856, 863 (C.D. Cal. 2022) (citation omitted). "As to the

- 14 -

1  'unlawful' prong, '[t]he UCL borrows violations of other laws and treats them as unlawful practices

2  that the unfair competition law makes independently actionable." *Shahbaz*, 2024 WL 4368253, at

3  *5 (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012)). And with respect

4  to the "unfair" prong, where a plaintiff's "claim under the unfair prong overlaps entirely with the

5  conduct alleged in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL

6  cannot survive if the claims under the other two prongs . . . do not survive." *Eidmann v. Walgreen*

7  *Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (citation omitted).

8          Unsurprisingly, "[c]ourts often analyze claims under these three statutes together" given

9  their overlapping nature. *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1296 (N.D. Cal.

10  2023). Notably, "claims under the [CLRA, FAL, and UCL] are governed by the 'reasonable

11  consumer' test," *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted), under

12  which "conduct is deceptive or misleading if it is likely to deceive a 'reasonable consumer[.]'"

13  *Andino v. Apple*, No. 20-cv-1628, 2021 WL 1549667, at *4 (E.D. Cal. Apr. 20, 2021) (citation

14  omitted). "The threshold for this 'reasonable consumer' standard is higher than a 'mere possibility'

15  that the label 'might conceivably be misunderstood by some few consumers viewing it in an

16  unreasonabl[e] manner.'" *Andino*, 2021 WL 1549667, at *4. "Instead, the reasonable consumer

17  standard necessitates a likelihood 'that a significant portion of the general consuming public or of

18  targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.* (citation

19  omitted). A consumer's "unreasonable assumptions" will not satisfy this objective standard. *Moore*

20  *v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *La Barbera v. Ole Mexican Foods Inc.*, No.

21  CV-20-2324, 2023 WL 4162348, at *11 (C.D. Cal. May 18, 2023) ("The bottom line is this: under

22  *Moore* [], the reasonable consumer does not approach purchasing decisions with a professorial

23  genius or inclination toward exhaustive research, but she is also not a chump, too doltish or careless

24  to engage [in a] simple analysis[.]"). "General knowledge and common sense further inform the

25  reasonable consumer [standard]." *Robles v. GOJO Indus., Inc.*, No. 22-55627, 2023 WL 4946601,

26  at *2 (9th Cir. 2023) (alteration added) (citing *Moore*, 4 F.4th at 883–84).

27          Plaintiffs fail to identify an actionable misrepresentation, omission, or misleading or untrue

28  statement. Plaintiffs do not allege that Ubisoft made any statements indicating that consumers

- 15 -

would, in fact, obtain unfettered access to *The Crew* if they purchased a physical copy. To the contrary, the packaging made clear that Ubisoft could limit access. *See* Compl. ¶ 54, Figs. 6,7; Ex. A. This is fatal to Plaintiffs' FAL, UCL, and CLRA claims. Plaintiffs' entire theory of the case is based on the faulty assumption that buying a physical disk entitled purchasers to infinite access to play the game. *See* Compl. ¶¶ 56, 62, 84. But a flawed assumption does not equate to an affirmative misrepresentation or false or misleading statement under California law. *See Leong II*, 2010 WL 1641364, at *10 ("Plaintiffs provide no facts to support their allegation that Defendants represented that users would 'own' the game data; Plaintiffs only allege what Defendants *failed* to disclose at the point of sale."); *Garcia v. Sony Comput. Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1064 (N.D. Cal. 2012) (dismissing UCL claim alleging misrepresentations in connection with gaming consoles due to failure to plead "an express, affirmative representation"); *Morgan v. Harmonix Music Sys., Inc.*, No. 08-5211, 2009 WL 2031765, at *3 (N.D. Cal. July 7, 2009) (dismissing CLRA claim that failed "to identify any affirmative misrepresentation" concerning gaming accessories); *Farley v. GameStop Corp.*, No. 12-cv-4734, 2013 WL 4042434, at *3 n.2 (D.N.J. Aug. 7, 2013) ("Plaintiffs do not allege, for instance, that Defendants told them their pre-owned video game purchase affirmative misrepresentation would include DLC when, in fact, it did not. Thus, Plaintiffs fail to plead an affirmative misrepresentation.").

Plaintiffs' efforts to skew certain packaging statements as alleged representations concerning ownership rights are unavailing. First, Plaintiffs allege that the warning that "UBISOFT MAY CANCEL ACCESS TO ONE OR MORE SPECIFIC ONLINE FEATURES" and that "the online portion of this game" could be "retire[d]" are misleading because they suggest there is an offline game. Compl ¶¶ 54-55. But the both the Xbox and PlayStation packages inform consumers that online connectivity is required to play *The Crew*. *See* Ex. A (Xbox warns that game "REQUIRES INTERNET"; PlayStation warns that "ONLINE PLAY" is "REQUIRED"); *see also Moore*, 4 F.4th at 882 (holding that "a plaintiff's unreasonable assumptions about a product's label . . . will not suffice" when "other available information . . . would quickly dissuade a reasonable consumer from the belief"). Plaintiffs also acknowledge their understanding that modern video games require internet connectivity. *See* Compl. ¶ 17 (modern games "use[] the internet"); ¶ 18

- 16 -

("[u]nlike in the past . . . players now have to rely on the company to continue hosting the game in order to continue having access. If the company's servers for a particular game go down or are shut down, the games become unplayable unless there is an offline version."). Plaintiffs do not plausibly allege that Ubisoft's statements concerning *The Crew*'s availability online amount to an express and affirmative misrepresentation regarding Plaintiffs' ownership rights.

Plaintiffs also allege that merely "by selling a physical copy of the Game, Ubisoft represented to consumers that they were purchasing a copy of the Game and were therefore obtaining the full bundle of traditional ownership rights over that copy of the Game." Compl. ¶ 56. Unsurprisingly, Plaintiffs do "not identify any specific marketing materials or statements in which" Ubisoft "made these alleged misrepresentations." *Kerkorian v. Samsung Elecs. Am., Inc.*, No. 1:18-CV-00870, 2021 WL 5399449, at *5 (E.D. Cal. Nov. 18, 2021). That is because they cannot. Plaintiffs fail to identify a public statement or action by Ubisoft in which it affirmatively represented that obtaining a physical copy of *The Crew* conferred full ownership. Instead, this supposed misrepresentation stems from *Plaintiffs'* own unreasonable and unfounded assumptions that one form of purchase entitled them to more ownership than another. *See Moore,* 4 F.4th at 882.

Plaintiffs next claim that Ubisoft misleadingly advertised *The Crew* as a "video game[]," when in fact, this was false since Defendants destroyed the Game's servers rendering the product no longer a video game." Compl. ¶ 98. This is nonsensical. The fact that Ubisoft retained the ability to shut down *The Crew*'s servers does not mean that *The Crew* is not a video game. It also does not follow that *The Crew* was not a video game when Plaintiffs obtained their copies (beyond the applicable statutes of limitation) and for the years that they played it.[5] And finally, in their most desperate Hail Mary, Plaintiffs allege that Ubisoft represented that consumers were obtaining full ownership of *The Crew* by including the tag line "NEVER DRIVE ALONE" on the packaging.

---

[5] Plaintiffs offer no support for their novel suggestion that they must have obtained full, indefinite ownership rights in *The Crew* for it to properly be a "video game." Nor can they. *See, e.g.*, "Video Game," Merriam-Webster, www.merriam-webster.com/dictionary/video%20game (defined as "an electronic game in which players control images on a video screen"); "Video Game," Dictionary.com, www.dictionary.com/browse/video-game (defined as "any of various interactive games played using a specialized electronic gaming device or a computer or mobile device and a television or other display screen, along with a means to control graphic images").

- 17 -

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS

CASE NO. 2:24-cv-03058-DAD-CSK

1    Compl. ¶ 98. That statement is a nod to the social nature of *The Crew* and the game's multiplayer

2    function. It amounts to nothing more than inactionable puffery because it does "not describe

3    specific or absolute characteristics of the product," but instead involves "[g]eneralized, vague, and

4    unspecified assertions." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1088 (N.D. Cal. 2017);

5    *Tomek v. Apple, Inc.*, No. 11-cv-02700, 2012 WL 2857035, at *4 (E.D. Cal. July 11, 2012).

6        Nor do Plaintiffs plausibly allege an actionable omission. The alleged omission—that

7    Plaintiffs were obtaining a limited license—is not "contrary to a representation actually made," nor

8    did Ubisoft fail to disclose this fact. *See* Exs. A, B; *see also Castillo v. Prime Hydration LLC*, No.

9    23-cv-3885, 2024 WL 4133815, at *7 (N.D. Cal. Sept. 9, 2024). Plaintiffs cannot plausibly allege

10   that Ubisoft misrepresented or omitted material facts concerning their ownership rights when

11   Plaintiffs were clearly and conspicuously warned that their access could be revoked and that the

12   software was "subject to license." *See* Compl. ¶ 57, Figs. 6-7; Exs. A, B.

13       In addition to inadequately pleading actual misrepresentations or omissions, the Complaint

14   also does not plausibly allege that Plaintiffs' reliance on the foregoing statements or omissions

15   satisfies the reasonable consumer standard. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938

16   (9th Cir. 2008). As an initial matter, the Complaint alleges only in conclusory fashion that the public

17   was likely to be deceived by Ubisoft's alleged misstatements. *See* Compl. ¶¶ 98, 114, 124. Courts

18   have repeatedly held that conclusory assertions that the public would be deceived or misled is not

19   enough, especially under Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Harris v. McDonald's*

20   *Corp.*, No. 20-cv-06533, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (dismissing UCL,

21   FAL, and CLRA claims in part because plaintiff's "contention as to what reasonable consumers

22   would infer" was "conclusory, as it lacks a factual foundation to support any determination as to

23   what reasonable consumers do (or do not) believe"); *Cullen v. Netflix, Inc.*, No. 5:11-cv-01199,

24   2013 WL 140103, at *8-9 (N.D. Cal. Jan. 10, 2013), *aff'd*, 600 F. App'x 508 (9th Cir. 2015).

25       To the extent it contains *any* substantive indications bearing on the reasonable consumer

26   standard, the Complaint indicates that a reasonable modern video game consumer would fully

27   understand they were purchasing a limited license to play *The Crew*. The packaging's warnings

28   that Ubisoft could "CANCEL ACCESS" to the game and that the software is "subject to license"

- 18 -

dispelled readers of the idea that they were obtaining unfettered ownership. Ex. A. The Complaint further alleges that "[i]t is a common practice for game developers to create and provide patches . . . once they decide to shut down a game's servers," Compl. ¶ 30, and lists examples of Ubisoft and other video game companies shutting down game servers. *See id.* at 31. By describing past industry practice and including examples of other companies shutting down games, Plaintiffs illustrate that a reasonable consumer would understand they were not purchasing the full "bundle of sticks" when they purchased *The Crew*. *See Moore*, 4 F.4th at 882; *Punian v. Gillette Co.,* No.14-cv-05028, 2016 WL 1029607, at *15 (N.D. Cal. Mar. 15, 2016). No reasonable consumer would believe that they owned and could access *The Crew* in perpetuity if they engaged in this "simple analysis" of the product label, and even more so if they followed the label's guidance to review the explicit licensing language in Ubisoft's Terms of Use. *Supra* n.9; *see also La Barbera*, 2023 WL 4162348, at *11; *Disney Enters., Inc. v. Redbox Automated Retail, LLC*, 336 F. Supp. 3d 1146, 1150, 1156 (C.D. Cal. 2018) (finding that reasonable purchasers would not believe that they were obtaining "unrestricted ownership rights to any digital content" when purchasing a physical copy of the *Black Panther* movie, in part because the box contained language warning that accessing the product "requires prior acceptance of license terms and conditions").

Nor is this Court obliged to impute Plaintiffs' unreasonable personal opinions about the form of their purchases onto the general public. *See Moore*, 4 F.4th at 882. Plaintiffs offer no support for their untenable position that providing a physical disk conveys unlimited ownership rights in its contents, or that one form of video game purchase should have entitled them to more ownership than another. *See* Compl. ¶ 21 (acknowledging millions of purchasers of digital copies on whose behalf Plaintiffs do not bring claims). This is particularly puzzling considering that Plaintiffs allege general knowledge that "[u]nlike in the past . . . players now have to rely on the company to continue hosting the game in order to continue having access. If the company's servers for a particular game go down or are shut down, the games become unplayable unless there is an offline version." *Id.* ¶ 18. The Court need not conflate Plaintiffs' contradictory personal opinions with that of a reasonable consumer and should accordingly determine that Plaintiffs fail to plausibly allege reliance under the CLRA, FAL, and UCL. *See, e.g.*, *McMahon*, 2017 WL 11681048, at *4

(finding no "reasonable consumer would have relied upon the alleged misrepresentations in the way Plaintiffs allegedly did[]" when purchasing *Grand Theft Auto V*); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229-30 (9th Cir. 2019) (rejecting plaintiff's assumptions at motion to dismiss stage as representative of reasonable consumers); *Panelli v. Target Corp.*, No. 24-CV-01218, 2024 WL 4596412, at *3-4 (S.D. Cal. Oct. 28, 2024) (same).

Plaintiffs' claims under the remaining UCL prongs also fail, even assuming *arguendo* that those claims are not time-barred and that Plaintiffs adequately plead standing. Plaintiffs' claims under the "unlawful" prong of the UCL are based on violations of the CLRA and FAL. *See* Compl. ¶¶ 100-01. Given that Plaintiffs' CLRA and FAL claims are time-barred, implausible, and that Plaintiffs do not plausibly allege standing, Plaintiffs fail to plead the necessary "predicate violation" of a "borrow[ed]" law to support their UCL claims. *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 17-cv-1515, 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020); *see also Eidmann*, 522 F. Supp. 3d at 647 ("[A] claim under [the UCL unlawful] prong hinges upon whether a plaintiff can formulate a claim under the predicate law . . . Because [plaintiff] failed to allege violations of the FAL, CLRA, and UCL . . . he is precluded from utilizing these violations as predicate acts under the unlawful prong[.]"). Finally, Plaintiffs' claims under the UCL's "unfairness" prong "overlap[] entirely with the conduct alleged in the fraudulent and unlawful prongs"—Ubisoft's supposed omissions, misrepresentations, and misleading or false statements at the point of sale. *See Eidmann*, 522 F. Supp. 3d at 647. Plaintiffs' unfairness allegations must therefore also fail, given that their claims under the UCL's fraudulent and unlawful prongs are inactionable. *See Condrashoff v. Gen. Motors LLC*, No. 24-cv-00108, 2024 WL 2399645, at *6 (E.D. Cal. May 23, 2024) ("[W]here a plaintiff cannot state a claim under the 'borrowed' law, he cannot state a UCL claim either.") (citation omitted). Plaintiffs' implausible CLRA, FAL, and UCL claims require dismissal.

### B. Plaintiffs' Failure to Allege an Actionable Omission or Misrepresentation, Justifiable Reliance, and Damages Is Fatal to Their Fraud-Based Claims.

Plaintiffs also neglect to plausibly allege the required elements of fraud, fraudulent inducement, and fraudulent misrepresentation. "Under California law, '[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of

- 20 -

falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'" *Condrashoff*, 2024 WL 2399645, at \*4 (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)). "Each element in a cause of action for fraud . . . must be factually and specifically alleged." *Cadlo*, 125 Cal. App. 4th at 519. "[T]he elements of a cause of action for fraud mirror" those of fraudulent inducement and fraudulent misrepresentation. *Flores v. Gain Cap. Grp., LLC*, No. 17-7873, 2018 WL 6133644, at \*6 (C.D. Cal. June 20, 2018)."To prove a claim . . . of fraudulent inducement, a plaintiff must show (a) a misrepresentation, false representation, concealment or nondisclosure; (b) knowledge of falsity; (c) intent to defraud or to induce plaintiff . . . (d) justifiable reliance; and (e) resulting damage." *Cream v. N. Leasing Sys.*, No. 15-CV-01208, 2015 WL 4606463, at \*5 (N.D. Cal. July 31, 2015). A claim of fraudulent or intentional misrepresentation requires "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Id.* at \*5. "[T]he mere assertion of 'reliance' is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance." *Yates v. Aurora Loan Servs., LLC,* No. 11–cv-00695, 2011 WL 2429376, at \*8 (N.D. Cal. June 13, 2011).

As a preliminary matter, Plaintiffs' common law fraud claim should therefore be dismissed as redundant for Plaintiffs to "consider which theory of fraud best fits the alleged misconduct." *Flores*, 2018 WL 6133644, at \*6. "While a plaintiff is free to plead alternative theories of recovery under the Federal Rules of Civil Procedure, [fraud claims are] not alternative but rather redundant" when raised simultaneously with fraudulent inducement and fraudulent misrepresentation claims "aris[ing] from the same conduct" that "seek the same relief for the same harm[.]" *Id.*

More substantively, Plaintiffs' fraud-based claims are defective for the same reasons that their CLRA, FAL, and UCL claims require dismissal: Plaintiffs do not plausibly allege an actionable misrepresentation or omission, justifiable reliance, or damages. The allegations in the Complaint undercut Plaintiffs' fraud-based claims because the product labels provide prominent notice to consumers that Ubisoft retained the ability to "CANCEL" player access, and the PlayStation package goes a step further in warning that consumers are obtaining the software *subject to license.* Those notices are reinforced by clear language of Ubisoft's then-operative Terms

- 21 -

of Use indicating the same. Moreover, Plaintiff Liu cannot plausibly allege actual and justifiable reliance because he purchased another *The Crew* game after he had undoubtable knowledge that he was obtaining a limited license to access Ubisoft's products. *See Leong I*, 2010 WL 11519184, at *3. And Plaintiff Cassell does not plausibly allege justifiable reliance beyond conclusory statements to that effect, which the Court need not accept as true. Finally, because Plaintiffs received access to *The Crew* precisely in line with what was marketed to them and clearly indicated on the packaging and corresponding Terms of Use, Plaintiffs cannot plausibly allege a claim for fraud.

### C.     Plaintiffs Do Not Plausibly Allege a Breach of Express or Implied Warranties.

Plaintiffs also fail to plead an actionable breach of an express or implied warranty. Taking the claims in turn, Plaintiffs' express warranty claim is premised on two central allegations: (1) that distributing a physical disk of *The Crew* amounted to an express warranty "that [the] Product was a video game"; and (2) that distributing a physical disk of *The Crew* amounted to an express warranty that Plaintiffs "were obtaining ownership rights over the copy of the Game they purchased." Compl. ¶ 142. "To constitute an actionable express warranty, the statement regarding the product must be specific and measurable." *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 936 (N.D. Cal. 2018); *see also Butts v. Cibo Vita, Inc.*, No. 2:22-CV-00644, 2023 WL 2588012, at *6 (E.D. Cal. Mar. 20, 2023) (requiring that seller make "an affirmation of fact or promise or provide[] a description of its goods[]"). Plaintiffs fail to allege that Ubisoft made any affirmative representations regarding either the metaphysical nature of the disk itself or that Plaintiffs were obtaining absolute ownership. *See, e.g.*, *Leong II*, 2010 WL 1641364, at *10; *Morgan*, 2009 WL 2031765, at *3; *Farley*, 2013 WL 4042434, at *3 n.2. Plaintiffs also provide no rational explanation for the proposition that shutting down *The Crew* means that it no longer exists. *See* Compl. ¶ 57. And the affirmative representations on the product packaging, combined with Ubisoft's corresponding Terms of Use, inform reasonable consumers that access to *The Crew* was revocable. Plaintiffs' failure to identify specific, measurable statements by Ubisoft that created a warranty doom Plaintiffs' claims of a breach of express warranty.

The Complaint does not clearly articulate the implied warranty from which their claims originate: (1) the implied warranty of merchantability or (2) the implied warranty of fitness. The

warranty of merchantability provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). The warranty of fitness further mandates that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for that purpose." *Id.* § 2315. California also permits independent breach of implied warranty claims under the Song-Beverly Act, providing separate causes of action for the breach of implied warranty of merchantability through Cal. Civ. Code § 1792 and the breach of implied warranty of fitness through Cal. Civ. Code § 1792.1.

Plaintiffs' implied warranty claims are similarly based on Ubisoft's alleged breach of an (1) "implied[] warrant[y] that the Product was a video game" when it "shut down the Game's servers, rendering the Game completely destroyed (and no longer an existing video game)," and (2) an "implied[] warrant[y] that purchasers of the physical version were obtaining ownership rights over the copy of the Game they purchased." Compl. ¶ 148. The first theory is inactionable for the reasons explained above. Namely, Plaintiffs offer no support for the idea that shutting down *The Crew*'s servers in 2024—over four years after Plaintiffs' purchases and ten years after the game's release— means that *The Crew* was not a video game when Plaintiffs purchased their physical copies. *The Crew* was a video game when Plaintiffs purchased their physical copies and *The Crew* remains a video game today, albeit an inoperable one. Moreover, Plaintiffs do not plausibly allege that Ubisoft impliedly warranted that purchasers were obtaining unrestricted ownership rights because Ubisoft included clear language on the packaging stating the exact opposite.

Any purported breach of implied warranty of merchantability claim further fails because Plaintiffs do not allege "a fundamental defect that renders the product unfit for its ordinary purpose." *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014); *see also Kamlade v. LEO Pharma Inc.*, No. 1:21-CV-00522, 2022 WL 358429, at *3 (E.D. Cal. Feb. 7, 2022) ("[A] plaintiff claiming breach of an implied warranty of merchantability must allege and ultimately show that the product 'did not possess even the most basic degree of fitness for ordinary use[.]'"). *The*

- 23 -

1    *Crew*'s packaging and Ubisoft's corresponding Terms of Use made clear that *The Crew*'s ordinary

2    purpose was to provide customers with a limited, revocable access to its content. Similarly,

3    Plaintiffs do not plausibly allege a breach of the implied warranty of fitness for a particular purpose

4    because they fail to plausibly allege that *The Crew* was "not reasonably fit for [its] intended

5    purpose, causing injury." *Gomez v. Medtronic PLC*, No. 1:18-CV-01296, 2018 WL 5603609, at *3

6    (E.D. Cal. Oct. 29, 2018). *The Crew*'s ordinary, intended purpose was to provide consumers with

7    a revocable, limited license to access its content pursuant to the unmistakable warnings on the

8    product packaging and Ubisoft's Terms of Use. Plaintiffs received just that for years, and Ubisoft

9    therefore provided *The Crew* consistent with and fit for its ordinary, advertised purpose.

10    Other aspects of Ubisoft's Terms of Use also undermine Plaintiffs' breach of warranty

11    claims. "A company may disclaim the implied warranty of merchantability" "so long as the

12    disclaimer 'mention[s] merchantability' and is 'conspicuous.'" *Minkler*, 65 F. Supp. 3d at 819

13    (quoting Cal. Com. Code § 2316(2)). Likewise, "[a] company may disclaim the implied warranty

14    of fitness" under the California Commercial Code "as long as the disclaimer is in writing and

15    'conspicuous.'" *Id.* (quoting Cal. Com. Code § 2316(2)). And "to disclaim the implied warranty of

16    merchantability and fitness under the Song-Beverly Act, the seller or manufacturer must provide

17    the buyer with a conspicuous writing attached to the goods which clearly informs the buyer, prior

18    to sale, that the goods are being sold on an 'as is' or 'with all faults' basis." *Clark v. LG Elecs.*

19    *U.S.A., Inc.*, No. 13-cv-485, 2013 WL 5816410, at *11 (S.D. Cal. Oct. 29, 2013) (quoting Cal. Civ.

20    Code §§ 1792.4(a)(1), (3)). At the time of the relevant sales, Ubisoft's Terms of Use prominently

21    stated in all capital-letter typeface:

22    YOU EXPRESSLY ACKNOWLEDGE THAT USE OF THE SERVICES AND
      GAMES IS AT YOUR OWN RISK. THE SERVICES ARE SUPPLIED ON AN
23    'AS IS' OR 'AS AVAILABLE' BASIS. UBISOFT, ITS PARENT,
      SUBSIDIARIES, OTHER AFFILIATED COMPANIES AND UBISOFT'S
24    LICENSORS AND THEIR RESPECTIVE OFFICERS, DIRECTORS,
      EMPLOYEES AND OTHER REPRESENTATIVES WORLDWIDE
25    EXPRESSLY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER
      EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED
26    WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR
      PURPOSES AND NON-INFRINGEMENT.

27

28

Exhibit B at 11. This disclaimer "state[s] in clear language and capitalized formatting" that Ubisoft disclaims all warranties, including without limitation warranties of merchantability and fitness. *Minkler*, 65 F. Supp. 3d at 819. Ubisoft's Terms of Use also declare conspicuously that its services are supplied "'as is,' thereby excluding all implied warranties under California Law." *Id.* Even assuming that Plaintiffs' breach of warranty claims are not time-barred and that Plaintiffs sufficiently established standing, Plaintiffs' breach of warranty claims are nevertheless implausible on the face of the Complaint and must be dismissed.[6]

### CONCLUSION

Plaintiffs' dissatisfaction with being unable to access a decade old, discontinued video game is not a sufficient basis upon which to file a putative class action complaint. Each of Plaintiffs' eight claims is ripe for dismissal because Plaintiffs failed to abide by the applicable statutes of limitation in bringing their claims. Even if Plaintiffs' claims were timely, Plaintiffs also fail to establish standing under Rule 12(b)(1) by way of failing to plausibly allege actual injury and actual and justifiable reliance on any alleged misconduct. Finally, Plaintiffs' claims are further subject to dismissal under Rule 12(b)(6) because Plaintiffs do not—and cannot—plausibly allege any actionable omission, misrepresentation, or untrue or misleading statement given the plain language of *The Crew*'s packaging and Ubisoft's corresponding Terms of Use. Plaintiffs' Complaint is therefore subject to dismissal with prejudice.

---

[6] The Magnuson-Moss Warranty Act ("MMWA") also allows for breach of express and implied warranty claims. *See Gamez v. Toyota Motor Sales, U.S.A.*, No. 23-CV-01464, 2024 WL 86320, at *5 (E.D. Cal. Jan. 8, 2024). However, "the MMWA 'borrows state law causes of action' such as express and implied warranty claims. 'Therefore, the federal claims hinge on the state law warranty claims.'" *Id.* (quoting *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008)). Accordingly, purported MMWA claims are subject to dismissal for the same reasons that Plaintiffs' breach of express and implied warranty claims fail under California law.

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS

CASE NO. 2:24-cv-03058-DAD-CSK

1   DATED:  February 25, 2025                    Respectfully submitted,

2

3

4                                               By:   /s/ Steven A. Marenberg

5                                                 STEVEN A. MARENBERG

6                                               Attorney for Defendant
                                                UBISOFT, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -