STEVEN A. MARENBERG (#101033)
stevenmarenberg@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5710

RYAN P. PHAIR (*admitted pro hac vice*)
CARTER C. SIMPSON (*pro hac vice pending*)
ryanphair@paulhastings.com
cartersimpson@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1751

Attorneys for Defendant
UBISOFT, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW CASSELL, ALAN LIU, and ANGEL CERRATO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBISOFT, INC.,<br><br>Defendant. | CASE NO. 2:24-cv-03058-DAD-CSK<br><br>**DEFENDANT UBISOFT, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. Dale A. Drozd<br>Date:  July 21, 2025<br>Time:  1:30 p.m.<br>Courtroom:  4, 15th Floor<br><br>Action Filed:  November 4, 2024<br><br>JURY TRIAL DEMANDED |

1

## NOTICE OF MOTION AND MOTION

2      **PLEASE TAKE NOTICE** that on July 21, 2025, at 1:30 p.m., in the above-captioned

3  Court, at Courtroom 4 on the 15th Floor of the Robert T. Matsui United States Courthouse, located

4  at 501 I Street, Sacramento, California, 95814, Defendant Ubisoft, Inc. will and hereby does move

5  the Court for an order dismissing Plaintiffs' First Amended Class Action Complaint (ECF No. 14)

6  in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

7      This Motion is based on this Notice of Motion and Motion, the accompanying

8  Memorandum of Points and Authorities, the pleadings and papers on file in this action, any matters

9  of which the Court may take judicial notice, any other matter that the Court may properly consider,

10  and such evidence and argument as may be presented at or before the hearing on this Motion.

11      This Motion is made following conference of counsel pursuant to Your Honor's Standing

12  Order in Civil Cases. Specifically, the parties conferred on April 28, 2025, to discuss the substance

13  of this Motion and any resolution. Having been unable to reach agreement on substantive matters,

14  Defendant Ubisoft, Inc. hereby files this Notice of Motion and Motion along with the

15  accompanying Memorandum of Points and Authorities.

16

17  DATED:  April 29, 2025           Respectfully submitted,

18

19

20                  By:  */s/ Steven A. Marenberg*

21                  STEVEN A. MARENBERG

22                  Attorney for Defendant
UBISOFT, INC.

23

24

25

26

27

28

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT      CASE NO. 2:24-cv-03058-DAD-CSK

1

## <u>TABLE OF CONTENTS</u>

2

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 1

ARGUMENT ................................................................................................................................. 4

    I.      Legal Standards ....................................................................................................... 4

    II.     All Of Plaintiffs' Claims Are Time-Barred Because They Accrued When Plaintiffs Purchased *The Crew* Over Four Years Prior To The Filing Of The Complaint. .......................................................................................................... 5

          A.    Plaintiffs' CLRA, FAL, And UCL Claims Were Filed Outside The Applicable Limitations Periods. ......................................................... 5

          B.    Plaintiffs Fail To Plausibly Excuse Their Untimely Fraud Claims ............ 7

          C.    Plaintiffs' Breach Of Warranty Claims Are Similarly Barred. ................... 9

          D.    Plaintiffs Fail To Plausibly Allege Their Inability To Discover. ................. 9

    III.    Plaintiffs Lack Statutory And Article III Standing To Challenge Ubisoft's Sunsetting Of *The Crew*. ...................................................................................... 12

          A.    Plaintiffs Fail To Adequately Allege That They Would Not Have Made Their Purchases But For The Alleged Representation Or Omission. ................................................................................................... 13

          B.    Plaintiffs Do Not Allege A Cognizable Injury. ........................................ 15

    IV.    Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim. .............. 17

          A.    Plaintiffs Do Not Plausibly Allege A Violation Of The CLRA, FAL, Or UCL Because They Do Not Allege An Actionable Omission, Misrepresentation, Or False Or Misleading Statement. .......... 17

          B.    Plaintiffs' Failure To Allege An Actionable Omission Or Misrepresentation, Justifiable Reliance And Damages Is Fatal To Their Fraud-Based Claims ..................................................................... 23

          C.    Plaintiffs Do Not Plausibly Allege A Violation Of The EFTA Or California Civil Code § 1749.5. ............................................................... 25

          D.    Plaintiffs Do Not Plausibly Allege A Breach Of Express Or Implied Warranty. .................................................................................... 27

CONCLUSION ........................................................................................................................... 30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abrantes v. Fitness 19 LLC*,
   No. 1:16-CV-00903, 2017 WL 4075576 (E.D. Cal. Sept. 14, 2017)......................................... 6

5

6

*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*,
   No. 17-cv-1515, 2020 WL 3893395 (E.D. Cal. July 10, 2020) ............................................. 23

7

8

*Anderson v. Apple Inc.*,
   500 F. Supp. 3d 993 (N.D. Cal. 2020) .................................................................................. 13

9

*Andino v. Apple*,
   No. 20-cv-01628, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ........................................... 18

10

11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 4

12

13

*Bassett v. Elec. Arts Inc.*,
   No. 13-CV-04208, 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015)............................................ 3

14

*Baxter v. State Teachers' Ret. Sys.*,
   18 Cal. App. 5th 340 (2017) .................................................................................................. 8

15

16

*Beaver v. Tarsadia Hotels*,
   816 F.3d 1170 (9th Cir. 2016).............................................................................................. 6

17

18

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019)............................................................................................. 22

19

20

*Brown v. Madison Reed, Inc.*,
   622 F. Supp. 3d 786 (N.D. Cal. 2022) ...........................................................................5, 7, 9

21

*Butts v. Cibo Vita, Inc.*,
   No. 2:22-CV-00644, 2023 WL 2588012 (E.D. Cal. Mar. 20, 2023) ..................................... 27

22

23

*Cadlo v. Owens-Ill., Inc.*,
   125 Cal. App. 4th 513 (2004) ......................................................................................... 13, 24

24

25

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (2014) ............................................................................................. 8

26

*Castillo v. Prime Hydration LLC*,
   No. 23-cv-03885, 2024 WL 4133815 (N.D. Cal. Sept. 9, 2024) ........................................... 21

27

28

*Clark v. LG Elecs. U.S.A., Inc.*,
   No. 13-cv-485, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ............................................... 29

ii

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)............................................................................. 10

*Condrashoff v. Gen. Motors LLC*,
    No. 24-cv-00108, 2024 WL 2399645 (E.D. Cal. May 23, 2024) .......................... 23

*Cortes v. Univ. & State Emps. Credit Union*,
    No. 22-CV-444, 2023 WL 12009972 (S.D. Cal. Mar. 13, 2023) ........................... 6

*Cream v. N. Leasing Sys.*,
    No. 15-CV-01208, 2015 WL 4606463 (N.D. Cal. July 31, 2015)......................... 24

*Cullen v. Netflix, Inc.*,
    No. 5:11-cv-01199, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013)......................... 21

*Datel Hldgs. Ltd. v. Microsoft Corp.*,
    712 F. Supp. 2d 974 (N.D. Cal. 2010) .................................................................. 3

*Davis v. Angelcare USA, LLC*,
    727 F. Supp. 3d 99 (D. Conn. 2024) .................................................................. 13

*Disney Enters., Inc. v. Redbox Automated Retail, LLC*,
    336 F. Supp. 3d 1146 (C.D. Cal. 2018) .............................................................. 22

*E–Fab, Inc. v. Accounts., Inc. Servs.*,
    153 Cal. App. 4th 1308 (2007) ........................................................................... 10

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016)............................................................................... 18

*Effinger v. Ancient Organics LLC*,
    657 F. Supp. 3d 1290 (N.D. Cal. 2023) .............................................................. 18

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) ........................................................... 18, 23

*Farley v. GameStop Corp.*,
    No. 12-cv-4734, 2013 WL 4042434 (D.N.J. Aug. 7, 2013) ............................ 19, 27

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) .............................................................. 13

*Ferris v. Ford Motor Co.*,
    No. 18-cv-03216, 2019 WL 1100376 (N.D. Cal. Mar. 8, 2019)............................ 9

*Fierro v. Cap. One, N.A.*,
    656 F. Supp. 3d 1121 (S.D. Cal. 2023) .............................................................. 17

*Flores v. Gain Cap. Grp., LLC*,
    No. 17-7873, 2018 WL 6133644 (C.D. Cal. June 20, 2018) ................................ 24

*Galvez v. Ford Motor Co.*,
 No. 17-cv-02250, 2018 WL 4700001 (E.D. Cal. Sept. 30, 2018) ............................................. 6

*Gamez v. Toyota Motor Sales, U.S.A.*,
 No. 23-CV-01464, 2024 WL 86320 (E.D. Cal. Jan. 8, 2024)...................................................... 30

*Garcia v. Gen. Motors LLC*,
 No. 18-cv-1313, 2018 WL 6460196 (E.D. Cal. Dec. 10, 2018) ............................................. 5, 8

*Garcia v. Sony Comput. Ent. Am., LLC*,
 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ......................................................................... 19

*Garza v. Spectrum Brands Pet LLC*,
 No. 1:24-CV-00012, 2024 WL 5202472 (E.D. Cal. Dec. 23, 2024) ........................................... 2

*Glaski v. Bank of Am., N.A.*,
 218 Cal. App. 4th 1079 (2013) ............................................................................... 15

*Gomez v. JP Morgan Chase Bank, N.A.*,
 No. 3:22-CV-01773, 2024 WL 2243243 (S.D. Cal. Mar. 26, 2024) ............................... 11, 12

*Gomez v. Medtronic PLC*,
 No. 1:18-CV-01296, 2018 WL 5603609 (E.D. Cal. Oct. 29, 2018)........................................... 29

*Hadley v. Kellogg Sales Co.*,
 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................... 20

*Harris v. LSP Prods. Grp, Inc..*,
 No. 2:18-cv-02973, 2021 WL 2682045 (E.D. Cal. June 30, 2021) ........................................... 9

*Harris v. McDonald's Corp.*,
 No. 20-cv-06533, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021)............................................ 21

*Herremans v. BMW of N. Am., LLC*,
 No. 14-cv-02363, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014)................................................. 7

*Johnson v. Mitsubishi Digital Elecs. Am. Inc.*,
 365 F. App'x 830 (9th Cir. 2010) ........................................................................... 16

*Kamlade v. LEO Pharma Inc.*,
 No. 1:21-CV-00522, 2022 WL 358429 (E.D. Cal. Feb. 7, 2022)............................................. 29

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009)................................................................................. 4

*Kerkorian v. Samsung Elecs. Am., Inc.*,
 No. 1:18-CV-00870, 2021 WL 5399449 (E.D. Cal. Nov. 18, 2021)........................................ 20

*Klein v. Ljubljana Inter Auto d.o.o.*,
 No. 20-cv-10079, 2022 WL 16859589 (C.D. Cal. Aug. 2, 2022)............................................. 7

iv

*Kranich v. Girardi*,
   No. 16-cv-01209, 2016 WL 11772429 (C.D. Cal. Aug. 8, 2016)............................................ 8

*La Barbera v. Olé Mexican Foods Inc.*,
   No. CV-20-2324, 2023 WL 4162348 (C.D. Cal. May 18, 2023) .................................... 18, 22

*Langan v. United Servs. Auto. Ass'n*,
   69 F. Supp. 3d 965 (N.D. Cal. 2014) .......................................................................... 17

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014)..................................................................................... 4

*Leong v. Square Enix of Am. Hldgs., Inc.*,
   No. 09-cv-4484, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ....................................*passim*

*Leong v. Square Enix of Am. Hldgs., Inc.*,
   No. 09-cv-4484, 2010 WL 11519184 (C.D. Cal. Jan. 20, 2010) ................................... 14

*Lloyd v. Facebook, Inc.*,
   No. 21-10075, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ........................................... 3

*Mai v. Supercell Oy*,
   648 F. Supp. 3d 1130 (N.D. Cal. 2023) .................................................................. 2, 16

*Mai v. Supercell Oy*,
   No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024) ....................................... 16

*McMahon v. Take-Two Interactive Software, Inc.*,
   No. 13-cv-02032, 2017 WL 11681048 (C.D. Cal. Apr. 19, 2017) ................................. 14, 22

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) ...................................................................... 29, 30

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ....................................................................... 18, 19, 20, 22

*Morgan v. Harmonix Music Sys., Inc.*,
   No. 08-5211, 2009 WL 2031765 (N.D. Cal. July 7, 2009)............................................ 19, 27

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013) ...................................................................... 17

*Nazemi v. Specialized Loan Servicing, LLC*,
   637 F. Supp. 3d 856 (C.D. Cal. 2022) ...................................................................... 17

*In re Nexus 6P Prod. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ...................................................................... 27

*Nguyen v. Nissan N. Am., Inc.*,
   487 F. Supp. 3d 845 (N.D. Cal. 2020) ........................................................................ 9

v

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ................................................................. 3

*Panelli v. Target Corp.*,
    No. 24-CV-01218, 2024 WL 4596412 (S.D. Cal. Oct. 28, 2024) ...................... 22

*Plumlee v. Pfizer, Inc.*,
    No. 13-cv-414, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ......................... 6, 7

*Punian v. Gillette Co.*,
    No.14-cv-05028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ........................ 22

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ............................................................................ 14

*Robles v. GOJO Indus., Inc.*,
    No. 22-55627, 2023 WL 4946601 (9th Cir. 2023) ......................................... 18

*Rood v. Keovilay-See*,
    No. 1:19-CV-01517, 2024 WL 3845480 (E.D. Cal. Aug. 16, 2024) .................. 14

*Rosal v. First Fed. Bank of Cal.*,
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) .............................................................. 8

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ............................................................................ 5

*Schuck v. Fed. Nat'l Mortg. Ass'n*,
    No. 11-cv-691, 2011 WL 2580552 (E.D. Cal. June 28, 2011) .......................... 15

*Shahbaz v. Arista Networks, Inc.*,
    No. 2:24-CV-00431, 2024 WL 4368253 (E.D. Cal. Oct. 1, 2024) ..................... 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................... 12

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. 2018) .............................................................. 13

*Taylor v. Apple, Inc.*,
    No. 20-cv-03906, 2021 WL 11559513 (N.D. Cal. Mar. 19, 2021) ..................... 16

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ............................................................................. 4

*Tomek v. Apple, Inc.*,
    No. 11-cv-02700, 2012 WL 2857035 (E.D. Cal. July 11, 2012) ........................ 20

*Turner v. City & Cnty. of San Fran.*,
    788 F.3d 1206 (9th Cir. 2015) ............................................................................ 4

vi

*Velazquez v. Gen. Motors LLC*,
    No. 24-cv-1519, 2024 WL 3617486 (E.D. Cal. Aug. 1, 2024)................................. 4

*Vera v. REL-BC, LLC*,
    66 Cal. App. 5th 57 (2021) ............................................................................................ 7

*Watkins v. MGA Ent. Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021) ...................................................................... 13

*West v. JPMorgan Chase Bank, N.A.*,
    214 Cal. App. 4th 780 (2013) ........................................................................................ 4

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)....................................................................................... 21

*Yates v. Aurora Loan Servs., LLC*,
    No. 11–cv–00695, 2011 WL 2429376 (N.D. Cal. June 13, 2011) ......................... 24

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................................................................... 5

**Rules and Statutes**

Fed. R. Civ. P. 9 .................................................................................................................. 4

Fed. R. Civ. P. 12 ..................................................................................................... *passim*

15 U.S.C. § 1693*l et seq.*........................................................................................ *passim*

Cal. Civ. Code § 1792 ..................................................................................................... 28

Cal. Com. Code § 2314(1) .............................................................................................. 28

Cal. Com. Code § 2725(2) ................................................................................................ 9

Cal. Bus. & Prof. Code § 17500 ............................................................................. *passim*

DEFENDANT UBISOFT, INC.'S                                    CASE NO. 2:24-cv-03058-DAD-CSK
MOTION TO DISMISS AMENDED COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2     The gravamen of Plaintiffs' First Amended Class Action Complaint (ECF No. 14,

3     "Amended Complaint") is that Defendant Ubisoft, Inc. allegedly misled purchasers of its video

4     game *The Crew* into believing they were purchasing unfettered ownership rights in the game, rather

5     than a limited license to access the game. The Amended Complaint further challenges Ubisoft's

6     sale of in-game "Crew Credits" as unlawful gift certificates or gift cards. But the reality is that

7     consumers received the benefit of their bargain on both fronts: they were explicitly and timely

8     notified that they were purchasing a license to *The Crew* and that their Crew Credits carried no

9     redeemable monetary value and could be terminated.

10     Frustrated with Ubisoft's recent decision to retire *The Crew* following a notice period

11     delineated on the product's packaging, Plaintiffs adopt a kitchen sink approach on behalf of a

12     putative class of nationwide customers, alleging nine causes of action that are all equally

13     inactionable. As a preliminary matter, all of Plaintiffs' claims are time-barred because Plaintiffs

14     purchased *The Crew* and any Crew Credits—and thus their claims accrued—beyond the applicable

15     limitations periods. Plaintiffs' claims also fail because the Amended Complaint does not plausibly

16     allege actual reliance or injury: Plaintiffs received access to *The Crew* and their Crew Credits

17     entirely consistent with what was marketed to them. This undermines any attempt to establish

18     Article III or statutory standing. Finally, and critically, Plaintiffs fail to state a plausible claim under

19     any of their causes of action, given the explicit warnings on *The Crew*'s packaging and in its Terms

20     of Use, and Plaintiffs' misplaced reliance on an inapt Electronic Funds Transfer Act provision.

21     Plaintiffs can point to no actionable misrepresentation or omission, and their Amended Complaint

22     is accordingly subject to dismissal with prejudice.

23

## FACTUAL BACKGROUND

24     *The Crew* was a popular racing video game released in 2014, featuring an open-world

25     environment for players to drive across a contiguous re-creation of the United States. *See* Am.

26     Compl. ¶ 23. Sequels to *The Crew* include *The Crew* 2, released in 2018, and *The Crew Motorfest*,

27     released in 2023. *Id.* ¶ 26.[1] Plaintiffs allege that consumers could purchase "in-game currency

28

---

[1] The claims in the Amended Complaint concern the first title in *The Crew* franchise only.

DEFENDANT UBISOFT, INC.'S                              CASE NO. 2:24-cv-03058-DAD-CSK
MOTION TO DISMISS AMENDED COMPLAINT

called Crew Credits" through "the in-game store or the Ubisoft Store." *Id.* ¶ 64. Crew Credits were "available for purchase in packages," and could be used to unlock "character cosmetics, vehicles, vehicle customi[z]ations, vanities, and Spare Parts" within the game. *Id.* ¶¶ 64-65. Plaintiff Alan Liu purchased a physical copy of *The Crew* "sometime shortly after November 22, 2018, likely as part of a Black Friday or Cyber Monday sale." *Id.* ¶ 12. Plaintiff Matthew Cassell purchased a physical copy of *The Crew* "in early 2020." *Id.* ¶ 10. Newly added Plaintiff Angel Cerrato "purchased the physical video game disk version of" *The Crew* "around 2016" and "purchased Crew Credits for use on the Game, as recently as sometime in 2017." *Id.* ¶ 14.

The Amended Complaint includes images of *The Crew*'s packaging, including one Xbox package and one PlayStation package, *id.* Figs. 6-7, but does not specify which version of *The Crew* each or any of the Plaintiffs purchased. Ubisoft has attached a digital version of the front and back covers of this packaging as Exhibit A to the Declaration of Brigitte Khoury.[2] Both the Xbox and PlayStation packaging contain a clear and conspicuous notice—in all capital letters—that "UBISOFT MAY CANCEL ACCESS TO ONE OR MORE SPECIFIC ONLINE FEATURES UPON A 30-DAY PRIOR NOTICE." Ex. A. The PlayStation packaging's list of game features warns "ONLINE PLAY (REQUIRED)," and again states on the front of the package: "ONLINE CONNECTION REQUIRED." *Id.* The Xbox package contains a similar warning that *The Crew* "REQUIRES INTERNET." *Id.* In other words, both packages warn (1) that playing *The Crew* requires online connectivity; and (2) that Ubisoft may terminate online connectivity upon 30-day prior notice. The PlayStation package also states that the "Software [is] *subject to license* (see terms at ubi.com)." *Id.* (emphasis added). The Terms of Use (the "Terms") in effect at the time of Plaintiffs' alleged purchases are attached as Exhibit B to the Declaration of Brigitte Khoury.[3]

---

[2] Courts regularly take judicial notice of product labels when those labels form the basis of the relevant causes of action. *See, e.g.*, *Garza v. Spectrum Brands Pet LLC*, No. 1:24-CV-00012, 2024 WL 5202472, at *1 (E.D. Cal. Dec. 23, 2024) (taking judicial notice of "the entire package imagery underlying the alleged product misrepresentation" in false advertising case "[b]ecause Plaintiff incorporated by reference the front label in her complaint").

[3] Courts regularly take judicial notice of video game distributors' terms of use where a plaintiff's claims are "governed by" those terms and "necessarily dependent on their access and use of" the video game at issue. *See Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1138 n.3 (N.D. Cal. 2023). Ubisoft's Terms were publicly available on its website—as advertised on *The Crew*'s PlayStation

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT

CASE NO. 2:24-cv-03058-DAD-CSK

Consistent with the notice period set forth on its product packaging, in December 2023 Ubisoft announced its intention to sunset *The Crew*, and it then disabled *The Crew*'s servers in March 2024. Am. Compl. ¶ 30. Disabling *The Crew*'s servers rendered any remaining Crew Credits within the game inaccessible. *Id.* ¶ 67. After Ubisoft shut down *The Crew*'s servers, "Plaintiff Liu purchased a spin-off game of *The Crew*"—presumably a sequel in the franchise—"also published by [Ubisoft], in or around October 2023." *Id.* ¶ 13.[4]

Dissatisfied with Ubisoft's decision to retire the ten-year-old video game pursuant to the warnings unambiguously included on its packaging, Plaintiffs filed this putative class action purporting to represent a nationwide class and California subclasses of purchasers bringing claims under the California Legal Remedies Act ("CLRA"), the California False Advertising Law ("FAL"), the California Unfair Competition Law ("UCL"), and the federal Electronic Funds Transfer Act ("EFTA"), as well as for common law fraud and breach of warranty. *See id.* ¶¶ 114-195. Plaintiffs allege that they purchased physical copies of *The Crew* under the belief that they were obtaining unfettered access to the game in perpetuity. *Id.* ¶¶ 10-15. Plaintiff Cerrato further alleges that the Crew Credits that he purchased were gift cards or gift certificates subject to an expiration date, in violation of the EFTA. *Id.* ¶¶ 14, 64-81. Plaintiffs also take issue with the fact that Ubisoft did not create an "offline, single-player option of the Game, otherwise known as a 'patch,'" after it shut down *The Crew*'s servers. *See id.* ¶ 32.

---

packaging—and Plaintiffs' claims necessarily depend on their contents to the extent the Terms clearly disclose that Plaintiffs were obtaining only limited licenses to access *The Crew* (which they do). Ubisoft therefore requests that the Court consider its then-operative Terms in assessing this Motion. *See, e.g.*, *Lloyd v. Facebook, Inc.*, No. 21-10075, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022) (taking judicial notice of terms "not reference[d]" in complaint but "relevant to Plaintiff's claims" because they "form[ed] the basis of Plaintiff's claims and should therefore be 'considered part of the pleading'") (citation omitted); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (taking judicial notice of terms "relevant to Plaintiffs' UCL and FAL claims" and collecting cases); *Bassett v. Elec. Arts Inc.*, No. 13-CV-04208, 2015 WL 1298644, at *6 (E.D.N.Y. Feb. 9, 2015) (considering terms associated with CLRA, FAL, UCL, and breach of warranty claims in part because the "back of the video game packaging refer[red] to" the terms "and identifie[d] a web site where the terms may be reviewed[]"); *Datel Hldgs. Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010) (taking judicial notice of terms associated with Xbox purchase "because Plaintiff's complaint depends, at least in part, on the contents of the documents").

[4] Plaintiff Liu's allegation here outright contradicts his prior allegations in his initial Complaint (ECF No. 1), as discussed further below.

3

1

## ARGUMENT

2

### I.   Legal Standards

3      A motion under Federal Rule of Civil Procedure 12(b)(1) "may either attack the allegations

4    of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter

5    jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.

6    1979) (citations omitted). "The district court resolves a facial attack as it would a motion to dismiss

7    under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable

8    inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a

9    legal matter[.]" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).

10     "In assessing whether a party has stated a claim upon which relief can be granted" under

11   Rule 12(b)(6), "a court must take all allegations of material fact as true and construe them in the

12   light most favorable to the nonmoving party; but 'conclusory allegations of law and unwarranted

13   inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" *Turner v. City & Cnty. of San Fran.*,

14   788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)).

15   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

16   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

17   *Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic

18   recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).

19     Plaintiffs carry a heavier burden when, as here, their claims sound in fraud. *See Velazquez*

20   *v. Gen. Motors LLC*, No. 24-cv-1519, 2024 WL 3617486, at *6 (E.D. Cal. Aug. 1, 2024). Under

21   Rule 9(b), Plaintiffs must "state with particularity the circumstances constituting fraud[.]" *Kearns*

22   *v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). This means a plaintiff "must allege facts

23   showing how, when, where, to whom, and by what means the representations were made, and, in

24   the case of a corporate defendant, the plaintiff must allege the names of the persons who made the

25   representations, their authority to speak on behalf of the corporation, to whom they spoke, what

26   they said or wrote, and when the representation was made." *West v. JPMorgan Chase Bank, N.A.*,

27   214 Cal. App. 4th 780, 793 (2013) (citation omitted). The plaintiff also must explain "what is false

28

4

or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted).

## II. All Of Plaintiffs' Claims Are Time-Barred Because They Accrued When Plaintiffs Purchased *The Crew* And Crew Credits Beyond The Applicable Limitations Periods.

As an initial matter, Plaintiffs' claims are untimely: it is evident on the face of the Amended Complaint that the relevant statutes of limitations have lapsed, even under the most forgiving four-year window. Plaintiffs' claims concerning *The Crew* accrued at the time of *purchase*, when Ubisoft purportedly made the alleged misrepresentations and omissions at issue. *See Leong v. Square Enix of Am. Hldgs., Inc.* ("*Leong II*"), No. 09-cv-4484, 2010 WL 1641364, at *9-10 (C.D. Cal. Apr. 20, 2010) (finding CLRA and FAL claims for alleged omission regarding video game purchase accrued at time of purchase and were barred by statute of limitations), *aff'd* 462 F. App'x 688 (9th Cir. 2011); *Garcia v. Gen. Motors LLC*, No. 18-cv-1313, 2018 WL 6460196, at *7 (E.D. Cal. Dec. 10, 2018) (finding fraud claims barred by statutes of limitations because they accrued at time of purchase). Plaintiffs' claims concerning Ubisoft's sale of allegedly unlawful Crew Credits likewise accrued at the time of purchase, far outside the EFTA's one-year statute of limitations. 15 U.S.C. § 1693m(g). And Plaintiffs fail to adequately plead that they were unable to discover their claims until a later date. As such, their claims are facially and incurably flawed and must be dismissed.

### A.    Plaintiffs' CLRA, FAL, UCL, And EFTA Claims Were Filed Outside The Applicable Limitations Periods.

Plaintiffs' statutory claims are all barred as untimely. "CLRA and FAL claims are subject to a three-year statute of limitations and UCL claims are subject to a four-year statute of limitations." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) (citing Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208; Cal. Civ. Proc. Code § 338(a)). "Because these three statutes 'proscribe misleading, false, or otherwise decept[ive] practices or statements in transactions for the sale or lease of goods to consumers,' a cause of action under each 'accrues when a defendant misrepresents or omits material information regarding a product or service and *a consumer makes a purchase* as a result of such deceptive practices.'" *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 799 (N.D. Cal. 2022) (emphasis added) (quoting *Plumlee v. Pfizer, Inc.*, No. 13-cv-414, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014)), *aff'd*, No. 22-16415, 2023 WL

8613496 (9th Cir. Dec. 13, 2023); *see also Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016) (explaining that a UCL claim is similarly "governed by common law accrual rules," which "provide[] that a cause of action ordinarily accrues when each of the elements of the cause of action (wrongdoing, causation, and harm) has been satisfied") (alterations in original). Put simply, CLRA, FAL, and UCL claims accrue when a plaintiff purchases the allegedly misrepresented product. *See Plumlee*, 2014 WL 695024, at *7; *see also Galvez v. Ford Motor Co.*, No. 17-cv-02250, 2018 WL 4700001, at *4 (E.D. Cal. Sept. 30, 2018) (collecting cases for proposition that "CLRA claims in consumer cases generally accrue on the date of purchase[]").

"Civil actions brought pursuant to the EFTA have a one-year statute of limitations." *Abrantes v. Fitness 19 LLC*, No. 1:16-CV-00903, 2017 WL 4075576, at *4 (E.D. Cal. Sept. 14, 2017). The EFTA states that causes of action thereunder must be brought "within one year from the date of the *occurrence of the violation*." 15 U.S.C. § 1693m(g) (emphasis added). Here, Plaintiff Cerrato is invoking an EFTA provision making it unlawful "*to sell or issue* a gift certificate, store gift card, or general-use prepaid card that is subject to an expiration date." 15 U.S.C. § 1693*l*-1(c)(1) (emphasis added). Combined with the plain text of 15 U.S.C. § 1693m(g), the EFTA is clear that actions thereunder accrue when the gift certificate, store gift card, or prepaid card subject to expiration is *sold* or *issued*. *See Cortes v. Univ. & State Emps. Credit Union*, No. 22-CV-444, 2023 WL 12009972, at *9 (S.D. Cal. Mar. 13, 2023) ("The timeliness of an EFTA claim, therefore, depends upon when the occurrence of the alleged violation took place.") (quotation omitted).

These accrual rules align with Plaintiffs' allegations in the Amended Complaint. Plaintiffs allege that they were deceived by misrepresentations and omissions that were either visible on or not included in *The Crew*'s packaging upon purchase. Plaintiffs' theories thus center around their understanding—or, rather, their misperceptions—*at the time of purchase*. *See* Am. Compl. ¶ 3 ("Plaintiffs *bought* physical disks storing the Game data, which reasonably made them believe that they could input that disk into their computer or game console and play the game whenever they wanted."); ¶ 10 ("When Plaintiff Cassell purchased the Product, he was under the impression that he was paying to own and possess the video game, *The Crew*, instead of paying for a limited license to use the Game."); ¶¶ 12-14 (same for other Plaintiffs); ¶ 187 (alleging Plaintiffs were "harmed

1    because they would not have purchased the Product, or would have paid substantially less for it,"

2    if they knew they were obtaining limited licenses). Plaintiffs allege they were harmed at the time

3    of purchase, when they "reasonably relied on these representations and omissions that were part of

4    the basis of the bargain[.]" *Id.* ¶¶ 13, 15; *see Brown*, 622 F. Supp. 3d at 799 (claims accrued at time

5    of purchase where plaintiff "makes a purchase as a result of such deceptive practices" and complaint

6    alleged "that Brown purchased the products after relying on Madison Reed's statements").

7         Plaintiff Cassell alleges he purchased his copy of *The Crew* in "early 2020," Plaintiff Liu

8    alleges he purchased his copy "shortly after November 22, 2018," and Plaintiff Cerrato alleges he

9    purchased his copy "around 2016." Am. Compl. ¶¶ 10, 12, 14. Plaintiff Cerrato further alleges he

10   purchased Crew Credits "as recently as sometime in 2017." *Id.* ¶ 14. Plaintiffs did not file the instant

11   lawsuit until November 2024, and Plaintiff Cerrato did not join the lawsuit or assert claims

12   concerning Crew Credits until March 2025—over four years after Plaintiff Cassell purchased the

13   game, almost six years after Plaintiff Liu's purchase, and potentially *eight* years after Plaintiff

14   Cerrato's purchases. Plaintiffs' CLRA, FAL, UCL, and EFTA claims are accordingly time-barred.

15   *See Herremans v. BMW of N. Am., LLC*, No. 14-cv-02363, 2014 WL 5017843, at *3 (C.D. Cal.

16   Oct. 3, 2014) ("Under the CLRA, the limitations period generally begins to run on the date the

17   allegedly wrongful act was committed—here, the date [plaintiffs] purchased [the product].");

18   *Plumlee*, 2014 WL 695024, at *7 (same); *Leong II*, 2010 WL 1641364, at *9-10 (same); 15 U.S.C.

19   § 1693m(g).

20        **B.    Plaintiffs Fail To Plausibly Excuse Their Untimely Fraud Claims.**

21        Although a different limitations period applies to Plaintiffs' common law fraud claims, the

22   timeliness issue persists. The statute of limitations for fraud under California law is three years and

23   accrues when the plaintiff "has reason to discover[] the cause of action." *Klein v. Ljubljana Inter*

24   *Auto d.o.o.*, No. 20-cv-10079, 2022 WL 16859589, at *8 (C.D. Cal. Aug. 2, 2022). A fraud claim

25   "accrue[s] even without actual knowledge if a plaintiff knows facts that should raise suspicion and

26   trigger a further investigation[]" of the allegedly fraudulent conduct. *Vera v. REL-BC, LLC*, 66 Cal.

27   App. 5th 57, 69 (2021). Thus, a "plaintiff must affirmatively excuse his failure to discover the fraud

28   within three years after it took place, by establishing facts showing that he was not negligent in

7

1   failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts

2   sufficient to put him on inquiry." *Baxter v. State Teachers' Ret. Sys.*, 18 Cal. App. 5th 340, 359

3   (2017) (alterations omitted) (citation omitted); *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d

4   1111, 1131 (N.D. Cal. 2009) ("Plaintiffs are charged with presumptive knowledge of an injury if

5   they have information of circumstances to put them on inquiry or if they have the opportunity to

6   obtain knowledge from sources open to their investigation."). Conclusory allegations will not

7   suffice. *Rosal*, 671 F. Supp. 2d at 1131. Instead, the "discovery related facts should be pleaded in

8   detail to allow the court to determine whether the fraud should have been discovered sooner."

9   *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014).

10          Plaintiffs were on notice of their claims when they purchased *The Crew* because the

11  packaging provided clear and conspicuous notice that their access could be revoked and that the

12  software was "subject to license." Figs. 6-7. While Plaintiffs allege generally that Ubisoft had

13  "exclusive knowledge" of the alleged omissions and misrepresentations, *id.* ¶¶ 95, 120, 162, 172,

14  180, the product packaging belies this allegation, as further explained below. But perhaps more

15  importantly, the Amended Complaint contains scarce substantive allegations concerning Plaintiffs'

16  knowledge or awareness of their claims. *Id.* ¶¶ 82-92.  Instead, Plaintiffs assert only generally that

17  they "did not have the ability to make an earlier discovery despite reasonable diligence" because a

18  "reasonable consumer exercising reasonable diligence would never know that [Ubisoft] would shut

19  their games down because [Ubisoft] never affirmatively disclosed the true nature of the property

20  rights it was conveying." *Id.* ¶¶ 86-87. These conclusory statements are insufficient. *See Cansino*,

21  224 Cal. App. 4th at 1473 (conclusory allegations that failed to explain "how plaintiffs made the

22  discovery or how it demonstrates that [there] was a misrepresentation" deemed insufficient); *see*

23  *also Kranich v. Girardi*, No. 16-cv-01209, 2016 WL 11772429, at *7 (C.D. Cal. Aug. 8, 2016)

24  (dismissing fraud-based claim as time-barred where "plaintiff d[id] not add a single factual

25  allegation to support his theory of either delayed discovery or fraudulent concealment. Rather,

26  plaintiff has merely added a number of conclusory statements regarding his inability to have made

27  earlier discovery[]"); *Garcia*, 2018 WL 6460196, at *7 (dismissing fraud-based claims where

28  "[p]laintiffs did not sufficiently plead that they were not at fault for their failure to discover the

8

1  defect, or had no actual or presumptive knowledge of facts sufficient to put them on inquiry[]").

2  Because the Amended Complaint does not adequately allege that Plaintiffs were not or should not

3  have been on notice of their claims at the time of purchase, the claims must be dismissed.

### C.    Plaintiffs' Breach of Warranty Claims Are Similarly Barred.

5          Plaintiffs' breach of warranty claims are subject to a four-year statute of limitation, and

6  suffer the same fate as the statutory and fraud-based claims. *See Brown*, 622 F. Supp. 3d at 799. "A

7  cause of action" for breach of express warranty "accrues when [the] breach occurs, [i.e. 'when

8  tender of delivery is made'] 'regardless of the aggrieved party's lack of knowledge of the breach.'"

9  Cal. Com. Code § 2725(2). The only exception is where "a warranty explicitly extends to future

10  performance" and "discovery of the breach must await the time of such performance[.]" *Id.*

11  Similarly, "a claim for breach of implied warranty accrues and, therefore, the statute of limitations

12  begins to run, upon tender of delivery." *Ferris v. Ford Motor Co.*, No. 18-cv-03216, 2019 WL

13  1100376, at *2 (N.D. Cal. Mar. 8, 2019) (citation omitted). The statute expressly provides that

14  accrual begins on tender of delivery, and California courts have interpreted this consistently,

15  explaining that breach of warranty claims accrue "at the time of purchase." *Nguyen v. Nissan N.*

16  *Am., Inc.*, 487 F. Supp. 3d 845, 855 (N.D. Cal. 2020); *see also Harris v. LSP Prods. Grp, Inc.*, No.

17  2:18-cv-02973, 2021 WL 2682045, at *6-7 (E.D. Cal. June 30, 2021) (holding that breach of

18  warranty claims accrued at the time of installation and plaintiff failed to establish any applicable

19  exception).

20          Plaintiffs' purchases occurred in 2016, 2017, 2018, and early 2020, and there is no

21  allegation that there was an extension of any warranty to future performance. As such, Plaintiffs'

22  warranty claims accrued at the time of purchase and are accordingly time-barred.

### D.    Plaintiffs Fail To Plausibly Allege Their Inability To Discover.

24          Finally, Plaintiffs have not adequately alleged their inability to discover the misconduct

25  sooner, as required to toll the relevant statutes of limitation under the delayed discovery rule. "In

26  California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has

27  reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024

28  (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). "A plaintiff whose

9

1    complaint shows on its face that his claim would be barred without the benefit of the discovery rule
2    must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to
3    have made earlier discovery despite reasonable diligence." *E–Fab, Inc. v. Accounts., Inc. Servs.*,
4    153 Cal. App. 4th 1308, 1319 (2007). The burden is on the plaintiff to show diligence, and
5    conclusory allegations again will not suffice. *See id.*

6         Plaintiffs make no attempt to meet their burden to demonstrate an inability to discover the
7    alleged misconduct sooner, beyond conclusory statements to that effect. *See, e.g.*, Am. Compl. at
8    ¶¶ 86-91 (e.g., "Plaintiffs are not at fault . . . because the cause of action did not accrue until the
9    Game was shut down."). Such non-substantive allegations fail to address the circumstances that
10   prevented Plaintiffs from discovering their claims earlier, in the same way and for the same reasons
11   that Plaintiffs failed to plausibly excuse their untimely fraud claims. *See supra* pp. 7-9.

12        Moreover, the Amended Complaint makes clear on its face that these allegations of delayed
13   discovery are implausible because Plaintiffs had ample notice that their access to *The Crew* and to
14   Crew Credits could be terminated. Both game packages provided by Plaintiffs clearly denote—in
15   all capital typeface—that Ubisoft may "CANCEL ACCESS TO ONE OR MORE SPECIFIC
16   ONLINE FEATURES UPON A 30-DAY PRIOR NOTICE," and that online connectivity was
17   "REQUIRED" to play the game, *see* Ex. A, thereby putting Plaintiffs on notice that they were
18   obtaining revocable access to the game. The PlayStation package further stated that the "Software
19   [is] *subject to license* (see terms at ubi.com)." *Id.* (emphasis added). Those Terms then reiterated
20   that Plaintiffs' purchases were subject to limited licenses. The very first Section was titled
21   "Description of Services and *Limited License to Use Services*." Ex. B at 1 (emphasis added). The
22   Terms later state in all capital lettering that Ubisoft "RESERVE[S] THE RIGHT . . . TO
23   TERMINATE *YOUR LICENSE FOR USE* OF THE GAMES AND SERVICES[.]" *Id.* at 12
24   (emphasis added). Additionally, they provide that Ubisoft "grants you a personal, non-transferable
25   and *non-exclusive license* enabling you to use this UBISOFT Software solely for the purposes of
26   use of the Services." *Id.* at 16 (emphasis added). Plaintiffs unquestionably had reason to know that
27   they were purchasing limited licenses to access *The Crew*, given the packaging language and
28

DEFENDANT UBISOFT, INC.'S                              CASE NO. 2:24-cv-03058-DAD-CSK
MOTION TO DISMISS AMENDED COMPLAINT

corresponding Terms. Any omissions or representations related thereto were discoverable at the time of sale.[5]

Regarding any alleged inability to discover Plaintiff Cerrato's EFTA claim, that argument fails for two reasons. First, California federal courts have concluded that "the discovery rule does not apply to the EFTA and 'the [EFTA] limitations period begins to run on the date the alleged [EFTA] violation actually happened.'" *Gomez v. JP Morgan Chase Bank, N.A.*, No. 3:22-CV-01773, 2024 WL 2243243, at *5 (S.D. Cal. Mar. 26, 2024) (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019)); *see also Widjaja v. JPMorgan Chase Bank*, N.A., No. CV 19-7825, 2019 WL 8108716, at *6 (C.D. Cal. Nov. 19, 2019) ("First, as Chase points out, it is unclear whether the discovery rule even applies to EFTA actions, and Plaintiff fails to cite a *single* case applying the discovery rule to an EFTA action."). Second, even if the discovery rule could apply to EFTA claims, Ubisoft's Terms clearly and conspicuously put Plaintiffs on notice of their lack of property rights regarding any virtual currency. The Terms unequivocally state that "upon termination, all achievements, virtual items, and/or virtual currency that you have acquired may, in [Ubisoft's] sole discretion, be terminated and forfeited. *You have no property rights in any achievements, virtual items and/or virtual currency*." Ex. B at 13 (emphasis added). Further, under the section titled "**VIRTUAL CURRENCY, VIRTUAL ITEMS, CREDITS, SUBSCRIPTIONS AND UBISOFT POINTS**," the Terms make clear that "**YOU ACKNOWLEDGE THAT UBISOFT IS NOT REQUIRED TO PROVIDE A REFUND FOR ANY REASON, AND THAT YOU WILL NOT RECEIVE MONEY OR OTHER COMPENSATION FOR UNUSED VIRTUAL CURRENCY OR VIRTUAL ITEMS WHEN AN ACCOUNT IS CLOSED, WHETHER SUCH CLOSURE WAS VOLUNTARY OR INVOLUNTARY**." *Id.* at 14-15. The Amended Complaint thus both (1) fails to allege sufficient discovery-related facts to allow this Court to

---

[5] Plaintiffs' Amended Complaint now includes a picture of an activation code provided to consumers on the inside of *The Crew*'s packaging, with an expiration date of January 1, 2099, to allege that Ubisoft affirmatively told "consumers they could activate the Game anytime during this *century*." Am. Compl. ¶ 89, Fig. 9. This is misleading. Figure 9 depicts an activation code for "ADD-ON CONTENT," not for the game itself. Ubisoft did not affirmatively represent that *The Crew* would be operable until 2099, and such a representation would be both inactionable puffery and in direct contradiction to the outside packaging language described herein.

DEFENDANT UBISOFT, INC.'S                    CASE NO. 2:24-cv-03058-DAD-CSK
MOTION TO DISMISS AMENDED COMPLAINT

substantiate that the alleged misconduct could not have been discovered sooner, and (2) features packaging demonstrating that Plaintiffs easily could have discovered that they were obtaining limited licenses, subject to Terms that further explained Plaintiffs' property rights (or lack thereof) in *The Crew* and any Crew Credits.

A contrary finding is foreclosed by *Leong II*, which confronted a strikingly similar set of facts. There, the plaintiffs alleged violations of the CLRA, FAL, and UCL against a video game distributor "based on [] alleged deception at the point of sale" because the distributor allegedly failed to inform purchasers that digital access to *Final Fantasy XI Online* could be revoked via a forfeiture clause within the distributor's terms and conditions if users failed to pay a subscription fee for more than three months. *See Leong II*, 2010 WL 1641364, at *3. The plaintiffs purchased *Final Fantasy XI Online* in 2005, yet argued that their claims did not accrue until 2009, when their accounts were forfeited. *See id.* at *9. The Central District of California—and, by implication, the Ninth Circuit, *see* 462 F. App'x at 689—rejected this argument. It held that the plaintiffs' claims accrued *at the time of purchase* because the plaintiffs "had reason [t]o discover the forfeiture clause" at the time of purchase through the game's packaging, which included references to the terms and conditions. *See* 2010 WL 1641364, at *3.

So too here: Plaintiffs had every opportunity to discover that they were obtaining limited licenses when obtaining *The Crew*, and that they had no property rights in any Crew Credits. The discovery rule cannot salvage Plaintiffs' time-barred claims.

### III. Plaintiffs Lack Statutory And Article III Standing To Challenge Ubisoft's Sunsetting Of *The Crew* And Crew Credits.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). As set forth below,

"California courts have held that the statutory standing requirements" of the CLRA, FAL, and UCL "are more stringent than the federal Article III standing requirement." *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99, 142 (D. Conn. 2024) (citation omitted). The requirements for standing under California law and Article III are not met here.

### A. Plaintiffs Fail To Adequately Allege That They Would Not Have Made Their Purchases But For The Alleged Representation Or Omission.

"In order to assert a claim under the UCL or FAL, a person must have 'suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition.'" *Ferrero*, 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011) (quoting Cal. Bus. & Prof. Code §§ 17204, 17535). "Therefore, actual reliance is required to have standing to sue under the UCL or FAL." *Id.* (citation omitted); *see also Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 905 n.5 (E.D. Cal. 2018) (requiring plaintiff to plead actual reliance under the UCL). "In addition, actual reliance is required to have standing to sue under the CLRA." *Ferrero*, 794 F. Supp. 2d at 1111. Actual and justifiable reliance is likewise required to establish standing for fraud and misrepresentation claims. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1005 (N.D. Cal. 2020) (collecting cases); *Cadlo v. Owens-Ill., Inc.*, 125 Cal. App. 4th 513, 519 (2004) ("In both causes of action [for fraud and misrepresentation], the plaintiff must plead that he or she actually relied on the misrepresentation."). "To plead reliance, a plaintiff must truthfully allege that she would not have bought the product but for the allegedly actionable misrepresentation or omission." *Watkins v. MGA Ent. Inc.*, 550 F. Supp. 3d 815, 834 (N.D. Cal. 2021) (internal quotation marks omitted).

There can be no doubt that Plaintiff Liu has pled himself out of court on the actual reliance element, although the Amended Complaint now improperly attempts to walk back his self-defeating allegations. Plaintiff Liu initially pled that "[a]fter the Product's servers were shut down," he "wished to continue playing the video game. Therefore, he purchased a spin-off game of *The Crew* also published by Defendants." ECF No. 1 at ¶ 8 (emphasis added). Ubisoft argued in its prior motion to dismiss that this allegation was fatal to Plaintiff Liu's actual reliance and undercut his standing for the reasons explained again below. *See* ECF No. 12 at 20-21. Plaintiff Liu now alleges that he "purchased a spin-off game of *The Crew*, also published by [Ubisoft], *in or around October*

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT

CASE NO. 2:24-cv-03058-DAD-CSK

1   *2023*," which is conveniently immediately *before* Ubisoft announced *The Crew*'s shutdown in

2   December 2023. Am. Compl. at ¶ 12, 30 (emphasis added). Plaintiff Liu's amendment to critical

3   facts underlying his claims is improper, and this Court need not consider his post-hoc, contradictory

4   allegations as true. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)

5   ("Although leave to amend should be liberally granted, the amended complaint may only allege

6   other facts consistent with the challenged pleading."); *Rood v. Keovilay-See*, No. 1:19-CV-01517,

7   2024 WL 3845480, at *8 n.3 (E.D. Cal. Aug. 16, 2024), *report and recommendation adopted*, No.

8   1:19-CV-01517, 2024 WL 4203701 (E.D. Cal. Sept. 16, 2024) (explaining that, "[w]here factual

9   allegations in an amended complaint are inconsistent with facts alleged in a prior complaint, a court

10  need not accept the new allegations as true," and collecting cases).

11          As alleged in Plaintiffs' initial Complaint, which Plaintiffs cannot now outright contradict,

12  Plaintiff Liu made his subsequent purchase with the knowledge that he was obtaining a revocable

13  license because Ubisoft *had just revoked his license* to *The Crew*. Actual reliance is implausible

14  where a consumer's knowledge of an alleged omission or misrepresentation in connection with

15  purchasing a video game "would not have dissuaded [them] from buying the game." *Leong v.*

16  *Square Enix of Am. Hldgs., Inc.* ("*Leong I*"), No. 09-cv-4484, 2010 WL 11519184, at *3 (C.D. Cal.

17  Jan. 20, 2010). The *Leong I* court dismissed a plaintiff's claims for this very reason. The plaintiff

18  alleged that she would not have purchased *Final Fantasy XI Online* but for the defendant's alleged

19  failure to inform her that the defendant "retain[ed] absolute control and ownership over the game

20  data." *Id.* at *1. The court, however, found this implausible because the plaintiff had repurchased

21  the game *after* the defendant revoked her access. *Id.* at *4. According to the court, the plaintiff's

22  second purchase showed that knowledge of the alleged omission "would not have dissuaded [her]

23  from buying the game in the first place," which fatally undercut her actual reliance allegations. *Id.*

24  at *3; *see also Leong II*, 2010 WL 1641364, at *1 (dismissing CLRA, FAL, UCL, and fraud claims

25  again for failure to remediate pleading issues); *McMahon v. Take-Two Interactive Software, Inc.*,

26  No. 13-cv-02032, 2017 WL 11681048, at *3-4 (C.D. Cal. Apr. 19, 2017) (finding plaintiffs did not

27  plausibly allege they would not have purchased *Grand Theft Auto V* if not for the alleged

28  misrepresentation). Plaintiff Liu cannot plausibly allege that he would not have purchased *The*

DEFENDANT UBISOFT, INC.'S                                    CASE NO. 2:24-cv-03058-DAD-CSK
MOTION TO DISMISS AMENDED COMPLAINT

1   *Crew* with knowledge that he was obtaining only revocable access because he later purchased a

2   new iteration of *The Crew* with that exact knowledge.

3          The other two Plaintiffs' reliance allegations are conclusory and fare no better. A plaintiff's

4   "mere assertion of reliance is insufficient" at the motion to dismiss stage. *See Schuck v. Fed. Nat'l*

5   *Mortg. Ass'n*, No. 11-cv-691, 2011 WL 2580552, at *5 (E.D. Cal. June 28, 2011) (citation omitted).

6   Plaintiffs' reliance allegations are bare and conclusory, merely reciting the legal elements of actual

7   reliance. *See, e.g.*, Am. Compl. ¶ 11 ("Plaintiff Cassell reasonably relied on these representations

8   and omissions that were part of the basis of the bargain, in that he would not have purchased the

9   Product or would not have purchased it on the same terms if the true facts had been known."); ¶ 15

10  (same as to Plaintiff Cerrato); ¶ 98 ("Plaintiffs and Class members viewed and relied on

11  Defendant's omissions and misrepresentations before purchasing the Game."). These conclusory

12  allegations are owed no deference and are insufficient to establish standing under Rule 12(b)(1).

13  *See, e.g.*, *Glaski v. Bank of Am., N.A.*, 218 Cal. App. 4th 1079, 1091 (2013) (finding insufficient

14  "conclusory allegation[s] of reliance" for fraud-based claims).

15          **B.      Plaintiffs Do Not Allege a Cognizable Injury.**

16          Plaintiffs also have not plausibly alleged injury, as required to establish Article III standing,

17  because their access to *The Crew* and any Crew Credits was entirely consistent with what was

18  marketed to them on *The Crew*'s packaging and in Ubisoft's Terms. Plaintiffs allege injury by

19  virtue of their purchase of a limited license to play *The Crew*, rather than full ownership and the

20  unrestricted right to play the game in perpetuity, and from Ubisoft terminating Crew Credits that

21  apparently went unused for eight years. But the Amended Complaint undercuts these allegations

22  on its face. The packaging contains clear notices that Ubisoft could "CANCEL ACCESS" to

23  aspects of the game that were "REQUIRED" to play, thus putting Plaintiffs on notice that they did

24  not have unconditional access and ownership. *See* Am. Compl. Figs. 6-7; Ex. A. The PlayStation

25  package goes a step further, warning purchasers that their access was "subject to license (*see* terms

26  at ubi.com)," *id.*, and those Terms provided even more clarity about the limited, revocable license

27  that Plaintiffs were acquiring. *See supra* p. 10-11. The Terms also put Plaintiffs on clear notice that

28

15

1  they acquired no property rights in any virtual currency, and that their virtual currency could be

2  terminated at Ubisoft's discretion. *See supra* pp. 10-12.

3       After making their purchases, Plaintiffs enjoyed access to *The Crew* and were able to use

4  their Crew Credits for years before Ubisoft decided in late 2023 to retire and shut down the servers

5  of the ten-year-old video game. Plaintiffs received the benefit of their bargain and cannot complain

6  now that they were deceived simply because Ubisoft did not create an offline version of the

7  discontinued video game or apply Crew Credits to subsequent franchise titles, neither of which

8  Ubisoft was obliged to do. *See* Am. Compl. ¶¶ 32-34, 131. The Northern District of California

9  decision in *Mai v. Supercell Oy* is instructive here. In *Mai*, plaintiffs were allegedly harmed by a

10  video game company's practice of inducing players to purchase "loot" boxes, which plaintiffs

11  alleged constituted illegal gambling games. The court found that the plaintiffs lacked standing

12  because they did "not allege a deficiency in the loot boxes or virtual currency that they received in

13  exchange for their real-world currency, or in the loot boxes they received in exchange for their

14  virtual currency." 648 F. Supp. 3d at 1134.[6] In other words, the plaintiffs failed to establish standing

15  because their complaint made clear that "in fact, they received what they paid for." *Id.* at 1136; *see*

16  *also Johnson v. Mitsubishi Digital Elecs. Am. Inc.*, 365 F. App'x 830, 832-83 (9th Cir. 2010)

17  (dismissing UCL and unjust enrichment claims for lack of standing because the plaintiff "got the

18  benefit of his bargain" in line with defendant's marketing); *Taylor v. Apple, Inc.*, No. 20-cv-03906,

19  2021 WL 11559513, at *4-6 (N.D. Cal. Mar. 19, 2021) (dismissing UCL, CLRA, and unjust

20  enrichment claims for lack of standing because plaintiffs "obtained exactly what [they] paid for").

21       That Plaintiffs are dissatisfied with Ubisoft's decision to retire *The Crew* and any

22  corresponding Crew Credits does not negate the fact that it is evident on the face of the Amended

23  Complaint that Plaintiffs received exactly what they paid for. Plaintiffs' claims should be dismissed

24  with prejudice for lack of standing under Rule 12(b)(1).

25

26

27  [6] The Ninth Circuit ruled that the dismissal should have been without prejudice, but otherwise
affirmed the finding that plaintiffs failed to allege economic injury-in-fact for statutory standing

28  purposes. *See Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024).

16

**IV.    Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim.**

    **A.    Plaintiffs Do Not Plausibly Allege A Violation Of The CLRA, FAL, Or UCL Because They Do Not Allege An Actionable Omission, Misrepresentation, Or False Or Misleading Statement.**

Putting aside the foregoing threshold deficiencies, Plaintiffs also fail to plausibly allege the required elements of a violation of the CLRA, FAL, or UCL. "The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013) (quoting Cal. Civ. Code § 1770). "To state a misrepresentation [or omission] claim under the CLRA, 'a plaintiff must allege (1) a misrepresentation [or omission]; (2) reliance on that misrepresentation [or omission]; and (3) damages caused by that misrepresentation [or omission].'" *Fierro v. Cap. One, N.A.*, 656 F. Supp. 3d 1121, 1128 (S.D. Cal. 2023) (citation omitted). "The FAL" similarly "makes it unlawful for any person or entity to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading' in connection with the sale of 'real or personal property' or 'services.'" *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 985 (N.D. Cal. 2014) (quoting Cal. Bus. & Prof. Code § 17500).

Additionally, the "UCL prohibits 'any unlawful, unfair or fraudulent business act or practice.'" *Shahbaz v. Arista Networks, Inc.*, No. 2:24-CV-00431, 2024 WL 4368253, at *5 (E.D. Cal. Oct. 1, 2024) (quoting Cal. Bus. & Prof. Code § 17200). "To state a claim under the 'fraudulent' prong of the UCL, Plaintiff[s] must allege that the conduct is likely to deceive members of the public, which is evaluated from the vantage of a reasonable consumer." *Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 863 (C.D. Cal. 2022) (citation omitted). "As to the 'unlawful' prong, '[t]he UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Shahbaz*, 2024 WL 4368253, at *5 (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012)). And with respect to the "unfair" prong, where a plaintiff's "claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs . . . do not survive." *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (citation omitted).

Unsurprisingly, "[c]ourts often analyze claims under these three statutes together" given their overlapping nature. *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1296 (N.D. Cal. 2023). Notably, "claims under the [CLRA, FAL, and UCL] are governed by the 'reasonable consumer' test," *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted), under which "conduct is deceptive or misleading if it is likely to deceive a 'reasonable consumer[.]'" *Andino v. Apple*, No. 20-cv-01628, 2021 WL 1549667, at *4 (E.D. Cal. Apr. 20, 2021) (citation omitted). "The threshold for this 'reasonable consumer' standard is higher than a 'mere possibility' that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonabl[e] manner.'" *Id.* at *4. "Instead, the reasonable consumer standard necessitates a likelihood 'that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.* (citation omitted). A consumer's "unreasonable assumptions" will not satisfy this objective standard. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *La Barbera v. Olé Mexican Foods Inc.*, No. CV-20-2324, 2023 WL 4162348, at *11 (C.D. Cal. May 18, 2023) ("The bottom line is this: under *Moore* [], the reasonable consumer does not approach purchasing decisions with a professorial genius or inclination toward exhaustive research, but she is also not a chump, too doltish or careless to engage [in a] simple analysis[.]"). "General knowledge and common sense further inform the reasonable consumer [standard]." *Robles v. GOJO Indus., Inc.*, No. 22-55627, 2023 WL 4946601, at *2 (9th Cir. 2023) (alteration added) (citing *Trader Joe's*, 4 F.4th at 883–84).

Plaintiffs fail to identify an actionable omission or misleading or untrue statement. Plaintiffs do not allege that Ubisoft made any statements indicating that consumers would, in fact, obtain unfettered access to *The Crew* if they purchased a physical copy. To the contrary, the packaging made clear that Ubisoft could limit access. *See* Am. Compl. ¶ 58, Figs. 6, 7; Ex. A. This is fatal to Plaintiffs' FAL, UCL, and CLRA claims. Plaintiffs' entire theory of the case is based on the faulty assumption *despite* these disclosures that buying a physical disk entitled purchasers to infinite access to play the game. *See* Am. Compl. ¶¶ 60, 95, 119. But a flawed assumption does not equate to an affirmative misrepresentation or false or misleading statement under California law. *See Leong II*, 2010 WL 1641364, at *10 ("Plaintiffs provide no facts to support their allegation that

18

1  Defendants represented that users would 'own' the game data; Plaintiffs only allege what

2  Defendants *failed* to disclose at the point of sale."); *Garcia v. Sony Comput. Ent. Am., LLC*, 859 F.

3  Supp. 2d 1056, 1064 (N.D. Cal. 2012) (dismissing UCL claim alleging misrepresentations in

4  connection with gaming consoles due to failure to plead "an express, affirmative representation");

5  *Morgan v. Harmonix Music Sys., Inc.*, No. 08-5211, 2009 WL 2031765, at *3 (N.D. Cal. July 7,

6  2009) (dismissing CLRA claim that failed "to identify any affirmative misrepresentation"

7  concerning gaming accessories); *Farley v. GameStop Corp.*, No. 12-cv-4734, 2013 WL 4042434,

8  at *3 n.2 (D.N.J. Aug. 7, 2013) ("Plaintiffs do not allege, for instance, that Defendants told them

9  their pre-owned video game purchase affirmative misrepresentation would include DLC when, in

10  fact, it did not. Thus, Plaintiffs fail to plead an affirmative misrepresentation.").

11      Plaintiffs' efforts to skew certain packaging statements as alleged representations

12  conferring ownership rights are unavailing. First, Plaintiffs allege that the warning that "UBISOFT

13  MAY CANCEL ACCESS TO ONE OR MORE SPECIFIC ONLINE FEATURES" and that "the

14  online portion of this game" could be "retire[d]" are misleading because they suggest there is an

15  offline game. Am. Compl ¶¶ 58-59. But the both the Xbox and PlayStation packages inform

16  consumers that online connectivity was required to play *The Crew*. *See* Ex. A (game "REQUIRES

17  INTERNET"; "ONLINE PLAY" is "REQUIRED"); *see also Moore,* 4 F.4th at 882 (holding that

18  "a plaintiff's unreasonable assumptions about a product's label … will not suffice" when "other

19  available information … would quickly dissuade a reasonable consumer from the belief"). Plaintiffs

20  also acknowledge their understanding that modern video games require internet connectivity. *See*

21  Am. Compl. ¶ 21 (modern games "use[] the internet" and "contain internet-based features"); ¶ 22

22  ("[u]nlike in the past … players now have to rely on the company to continue hosting the game in

23  order to continue having access. If the company's servers for a particular game go down or are shut

24  down, the games become unplayable unless there is an offline version."). Plaintiffs do not plausibly

25  allege that Ubisoft's statements concerning *The Crew*'s availability online amount to an express

26  and affirmative misrepresentation regarding Plaintiffs' ownership rights.

27      Plaintiffs also allege that merely "by selling a physical copy of the Game, Ubisoft

28  represented to consumers that they were purchasing a copy of the Game and were therefore

obtaining the full bundle of traditional ownership rights over that copy of the Game[.]" Am. Compl. ¶ 60. Unsurprisingly, Plaintiffs do "not identify any specific marketing materials or statements in which" Ubisoft "made these alleged misrepresentations." *Kerkorian v. Samsung Elecs. Am., Inc.*, No. 1:18-CV-00870, 2021 WL 5399449, at *5 (E.D. Cal. Nov. 18, 2021). Because they cannot. Plaintiffs fail to identify a statement or action by Ubisoft in which it affirmatively represented that obtaining a physical copy of *The Crew* conferred full ownership. Instead, this supposed misrepresentation stems from Plaintiffs' own unreasonable and unfounded assumptions that one form of purchase entitled them to more ownership than another. *See Moore,* 4 F.4th at 882.

Plaintiffs next claim that Ubisoft misrepresented *The Crew* as a "video game[], when in fact, this was false since [Ubisoft] destroyed the Game's servers rendering the product no longer a video game." Am. Compl. ¶¶ 133, 141. This is nonsensical. The fact that Ubisoft retained the ability to shut down *The Crew*'s servers does not mean that *The Crew* was not a video game. It also does not follow that *The Crew* was not a video game when Plaintiffs made their purchases (beyond the applicable statutes of limitation) and for the years that they played it.[7] And finally, in their most desperate Hail Mary, Plaintiffs allege that Ubisoft represented that consumers were obtaining full ownership of *The Crew* by including the tag line "NEVER DRIVE ALONE" on the packaging. *Id.* ¶ 61. That statement is a nod to the social nature of *The Crew* and the game's multiplayer function. It amounts to nothing more than inactionable puffery because it does "not describe specific or absolute characteristics of the product," but instead involves "[g]eneralized, vague, and unspecified assertions." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1088 (N.D. Cal. 2017); *Tomek v. Apple, Inc.*, No. 11-cv-02700, 2012 WL 2857035, at *4 (E.D. Cal. July 11, 2012).

Nor do Plaintiffs plausibly allege an actionable omission. The alleged omission—that Plaintiffs were obtaining a limited license—is not "contrary to a representation actually made," nor

---

[7] Plaintiffs offer no support for their novel suggestion that they must have full, indefinite ownership rights in *The Crew* for it to properly be a "video game." Nor can they. *See, e.g.*, "Video Game," Merriam-Webster, www.merriam-webster.com/dictionary/video%20game (defined as "an electronic game in which players control images on a video screen"); "Video Game," Dictionary.com, www.dictionary.com/browse/video-game (defined as "any of various interactive games played using a specialized electronic gaming device or a computer or mobile device and a television or other display screen, along with a means to control graphic images").

DEFENDANT UBISOFT, INC.'S                               CASE NO. 2:24-cv-03058-DAD-CSK
MOTION TO DISMISS AMENDED COMPLAINT

did Ubisoft fail to disclose this fact. *See* Exs. A, B; *see also Castillo v. Prime Hydration LLC*, No. 23-cv-03885, 2024 WL 4133815, at *7 (N.D. Cal. Sept. 9, 2024). Plaintiffs cannot plausibly allege that Ubisoft misrepresented or omitted material facts concerning their ownership rights when Plaintiffs were clearly and conspicuously warned that their access could be revoked and that the software was "subject to license." *See* Am. Compl. Figs. 6-7; Exs. A, B.

In addition to inadequately pleading actual misrepresentations or omissions, the Amended Complaint also does not plausibly allege that Plaintiffs' reliance on the foregoing statements or omissions satisfies the reasonable consumer standard. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). As an initial matter, the Amended Complaint alleges only in conclusory fashion that the public was likely to be deceived by Ubisoft's alleged misstatements. *See* Am. Compl. ¶¶ 87, 133, 158, 168. Courts have repeatedly held that such conclusory assertions are not enough, especially under Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Harris v. McDonald's Corp.*, No. 20-cv-06533, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (dismissing UCL, FAL, and CLRA claims in part because plaintiff's "contention as to what reasonable consumers would infer" was "conclusory, as it lacks a factual foundation to support any determination as to what reasonable consumers do (or do not) believe"); *Cullen v. Netflix, Inc.*, No. 5:11-cv-01199, 2013 WL 140103, at *8-9 (N.D. Cal. Jan. 10, 2013), *aff'd*, 600 F. App'x 508 (9th Cir. 2015).

To the extent it contains *any* substantive indications bearing on the reasonable consumer standard, the Amended Complaint indicates that a reasonable modern video game consumer would fully understand they were purchasing a limited license to play *The Crew*. It features *The Crew*'s packaging warning that Ubisoft could "CANCEL ACCESS" and that the game is "subject to license[.]" Ex. A. The Amended Complaint further alleges that "[i]t is a common practice for game developers to create and provide patches . . . once they decide to shut down a game's servers," Am. Compl. ¶ 34, and lists examples of Ubisoft and other video game companies shutting down game servers, *id.* ¶ 35. By describing past industry practice and including examples of other companies shutting down games, Plaintiffs illustrate that a reasonable consumer would understand they were not obtaining the full "bundle of sticks" when they purchased *The Crew*. *See Moore*, 4 F.4th at 882; *Punian v. Gillette Co.*, No.14-cv-05028, 2016 WL 1029607, at *15 (N.D. Cal. Mar. 15, 2016). In

1    short, no reasonable consumer would believe that they owned and could access *The Crew* in

2    perpetuity, and even more so if they engaged in a "simple analysis" of the packaging, and if they

3    reviewed the explicit licensing language in Ubisoft's Terms. *See La Barbera*, 2023 WL 4162348,

4    at *11; *Disney Enters., Inc. v. Redbox Automated Retail, LLC*, 336 F. Supp. 3d 1146, 1150, 1156

5    (C.D. Cal. 2018) (finding that reasonable purchasers would not believe that they were obtaining

6    "unrestricted ownership rights to any digital content" when purchasing a physical copy of the *Black*

7    *Panther* movie, in part because the box contained language warning that accessing the product

8    "requires prior acceptance of license terms and conditions").

9            Nor is this Court obliged to impute Plaintiffs' unreasonable personal opinions about the

10   form of their purchases onto the general public. *See Moore*, 4 F.4th at 882. Plaintiffs offer no

11   support for their untenable position that providing a physical disk conveys unlimited ownership

12   rights in its contents, or that one form of video game purchase should have entitled them to more

13   ownership than another. *See* Am. Compl. ¶ 25 (acknowledging millions of purchasers of digital

14   copies on whose behalf Plaintiffs do not bring claims). This is particularly puzzling considering

15   that Plaintiffs allege general knowledge that "[u]nlike in the past . . . players now have to rely on

16   the company to continue hosting the game in order to continue having access. If the company's

17   servers for a particular game go down or are shut down, the games become unplayable unless there

18   is an offline version." *Id.* ¶ 22. The Court need not conflate Plaintiffs' contradictory personal

19   opinions with that of a reasonable consumer and should accordingly determine that Plaintiffs fail

20   to plausibly allege reliance under the CLRA, FAL, and UCL. *See, e.g.*, *McMahon*, 2017 WL

21   11681048, at *4 (finding no "reasonable consumer would have relied upon the alleged

22   misrepresentations in the way Plaintiffs allegedly did[]" when purchasing *Grand Theft Auto V*);

23   *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229-30 (9th Cir. 2019) (rejecting plaintiff's

24   assumptions at pleadings stage as representative of reasonable consumers); *Panelli v. Target Corp.*,

25   No. 24-CV-01218, 2024 WL 4596412, at *3-4 (S.D. Cal. Oct. 28, 2024) (same).

26          Plaintiffs' claims under the remaining UCL prongs also fail, even assuming *arguendo* they

27   are not time-barred and fail to establish standing. Plaintiffs' claims under the "unlawful" prong of

28   the UCL are based on violations of the CLRA, FAL, EFTA, and California Civil Code § 1749.5.

Am. Compl. ¶¶ 135-137. Given that Plaintiffs' CLRA and FAL claims are time-barred, implausible, and that Plaintiffs do not plausibly allege standing, Plaintiffs fail to plead the necessary "predicate violation" of a "borrow[ed]" law to support their UCL claims under either the CLRA or FAL. *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 17-cv-1515, 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020); *see also Eidmann*, 522 F. Supp. 3d at 647 ("[A] claim under [the UCL unlawful] prong hinges upon whether a plaintiff can formulate a claim under the predicate law . . . Because [plaintiff] failed to allege violations of the FAL, CLRA, and UCL . . . he is precluded from utilizing these violations as predicate acts under the unlawful prong[.]"). Plaintiffs' EFTA claims with reference to California Civil Code § 1749.5 are also time-barred as explained above, and implausible as explained below, so they likewise cannot act as a predicate violation.

Finally, Plaintiffs' claims under the UCL's "unfairness" prong "overlap[] entirely with the conduct alleged in the fraudulent and unlawful prongs"—Ubisoft's supposed omissions, misrepresentations, and misleading or false statements at the point of sale and allegedly unlawful issuance of Crew Credits. *See Eidmann*, 522 F. Supp. 3d at 647. Plaintiffs' unfairness allegations must therefore also fail, given that their claims under the UCL's fraudulent and unlawful prongs are inactionable. *See Condrashoff v. Gen. Motors LLC*, No. 24-cv-00108, 2024 WL 2399645, at *6 (E.D. Cal. May 23, 2024) ("[W]here a plaintiff cannot state a claim under the 'borrowed' law, he cannot state a UCL claim either.") (citation omitted).

## B. Plaintiffs' Failure To Allege An Actionable Omission Or Misrepresentation, Justifiable Reliance, And Damages Is Fatal To Their Fraud-Based Claims.

Plaintiffs also neglect to plausibly allege the required elements of fraud, fraudulent inducement, and fraudulent misrepresentation. "Under California law, '[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'" *Condrashoff*, 2024 WL 2399645, at *4 (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)). "Each element in a cause of action for fraud . . . must be factually and specifically alleged." *Cadlo*, 125 Cal. App. 4th at 519. "[T]he elements of a cause of action for fraud" mirror those of fraudulent inducement and fraudulent misrepresentation. *Flores*

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT

CASE NO. 2:24-cv-03058-DAD-CSK

*v. Gain Cap. Grp.*, *LLC*, No. 17-7873, 2018 WL 6133644, at *6 (C.D. Cal. June 20, 2018). "To prove a claim . . . of fraudulent inducement, a plaintiff must show (a) a misrepresentation, false representation, concealment or nondisclosure; (b) knowledge of falsity; (c) intent to defraud or to induce plaintiff . . . (d) justifiable reliance; and (e) resulting damage." *Cream v. N. Leasing Sys.*, No. 15-CV-01208, 2015 WL 4606463, at *5 (N.D. Cal. July 31, 2015). "[T]he mere assertion of 'reliance' is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance." *Yates v. Aurora Loan Servs., LLC,* No. 11–cv-00695, 2011 WL 2429376, at *8 (N.D. Cal. June 13, 2011).

First, Plaintiffs' common law fraud claims should be dismissed as redundant because Plaintiffs failed to "consider which theory of fraud best fits the alleged misconduct." *Flores*, 2018 WL 6133644, at *6. "While a plaintiff is free to plead alternative theories of recovery under the Federal Rules of Civil Procedure, [fraud claims are] not alternative but rather redundant" when raised simultaneously with fraudulent inducement and fraudulent misrepresentation claims "aris[ing] from the same conduct" that "seek the same relief for the same harm[.]" *Id.*

More substantively, Plaintiffs' fraud claims are defective for the same reasons that their CLRA, FAL, and UCL claims require dismissal: Plaintiffs do not plausibly allege an actionable misrepresentation or omission, justifiable reliance, or damages. The allegations in the Amended Complaint undercut Plaintiffs' fraud-based claims because the product labels provide prominent notice to consumers that Ubisoft retained the ability to terminate player access, and the PlayStation package goes a step further in warning that consumers are obtaining the software *subject to license*. Those notices are reinforced by clear language of Ubisoft's Terms indicating the same. Moreover, Plaintiff Liu cannot plausibly allege actual and justifiable reliance because he purchased another *The Crew* game after he had undoubtable knowledge that he was obtaining a limited license to access Ubisoft's products, and Plaintiffs Cassell and Cerrato do not plausibly allege justifiable reliance. *See supra* pp. 13-15. Because Plaintiffs received access to *The Crew* precisely in line with what was marketed to them and clearly indicated on the packaging and corresponding Terms, Plaintiffs cannot plausibly allege a claim for fraud.

### C. Plaintiffs Do Not Plausibly Allege A Violation Of The EFTA Or California Civil Code § 1749.5.

The Amended Complaint adds a claim under a novel, rarely invoked EFTA provision, alleging that Ubisoft's sale of Crew Credits constitutes the unlawful sale or issuance of gift certificates or store gift cards subject to expiration dates, with reference to California Civil Code § 1749.5. *See* Am. Compl. ¶¶ 71, 147-154.[8] 15 U.S.C. § 1693*l*-1(c)(1) makes it "unlawful for any person to sell or issue a gift certificate, store gift card, or general-use prepaid card that is subject to an expiration date." It defines "gift certificate" as "an electronic promise that is":

    i.     redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo;
    ii.    issued in a specified amount that may not be increased or reloaded;
    iii.   purchased on a prepaid basis in exchange for payment; and
    iv.   honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

*Id.* § 1693*l*-1(a)(2)(B). A "store gift card," on the other hand, is defined as "an electronic promise, plastic card, or other payment code or device that" also satisfies the above definition, but with respect to (ii), a store gift card may be "issued in a specified amount, whether or not that amount may be increased in value or reloaded at the request of the holder." *Id.* § 1693*l*-1(a)(2)(C). The EFTA also sets forth certain exclusions. Any "electronic promise, plastic card, or payment code or device" that is "reloadable and not marketed or labeled as a gift card or gift certificate" is not subject to the requirements of the EFTA. *Id.* § 1693*l*-1(a)(2)(D)(ii).

As explained above, Plaintiff Cerrato's EFTA claim is time-barred and should be dismissed on that independent ground. Nevertheless, the claim also fails because the Amended Complaint (1) does not—and cannot—establish that Crew Credits fit the statutory definition of a "gift certificate" or "gift card"[9]; (2) makes clear that Crew Credits qualify for the exclusion in § 1693*l*-1(a); and (3) does not adequately allege that Crew Credits were subject to an expiration date. First, Plaintiff Cerrato alleges that each consumer's "digital wallet of Crew Credits can be increased and

---

[8] Plaintiff Cerrato alleges generally that Ubisoft violated California Civil Code § 1749.5, but does not assert any such violation as an independent cause of action.

[9] Plaintiff Cerrato alleges that "each individual Crew Credit is its own gift certificate under [the] EFTA, and each consumers' digital wallet of Cre[w] Credits (plural) is a store gift card under [the] EFTA." Am. Compl. ¶ 71.

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT

CASE NO. 2:24-cv-03058-DAD-CSK

reloaded," Am. Compl. ¶ 74, thereby eliminating the possibility that Crew Credits can constitute a gift certificate under § 1693*l*-1(a)(2)(B)(ii). *See also* Am. Compl. ¶ 74 (alleging that consumers "can purchase more Crew Credits" to increase their virtual balance to unlock additional in-game content). Nor does the Amended Complaint allege that Crew Credits were purchased on a prepaid basis under § 1693*l*-1(a)(2)(B)(iii), or indeed that they constitute a store of monetary value that can be "redeem[ed]" or "honor[ed]" under § 1693*l*-1(a)(2)(B)(i) or (iv). *See also* Ex. B at 13-15 (users "have no property rights" in and will receive no "money or other compensation" for Crew Credits).

Second, the Amended Complaint makes clear that—even if they *were* gift certificates or store gift cards—Crew Credits fall within the EFTA's exclusion for "electronic promise[s]" that are "reloadable and not marketed or labeled as a gift card or gift certificate." *Id.* § 1693*l*–1(a)(2)(D)(ii). Plaintiff Cerrato affirmatively pleads that Crew Credits are reloadable; and he does not (because he *cannot*) plead that they were ever "marketed or labeled as a gift card or gift certificate." *Id*. Indeed, he offers *no* allegations concerning Ubisoft's marketing or labeling of Crew Credits. *See* Am. Compl. ¶¶ 64-81. And the reason why is simple: Ubisoft has made no such representations, and in fact makes statements to the contrary in its Terms. *See* Ex. B at 13-15.

And finally, Plaintiff Cerrato fails to plead that Ubisoft actually sold Crew Credits that were "subject an expiration date." Rather, he alleges generally that the Crew Credits he purchased had an expiration date because he lost access to them when Ubisoft retired *The Crew*. *See* Am. Compl. ¶ 148. In other words, he alleges that Ubisoft necessarily "expired" Crew Credits by retiring the video game in which they were used, *not* that it ever sold Crew Credits with a delineated expiration date. This is fatal to the EFTA claim. In *Freeman v. Wal-Mart Stores, Inc.*, a plaintiff brought CLRA and UCL claims against Wal-Mart, alleging a predicate violation of California Civil Code § 1749.5—the same provision invoked here—by issuing a shopping card that imposed a recurring service fee after twenty-four months of non-use that would, in practice, eventually deplete the value of the gift card. *See* 111 Cal. App. 4th 660, 662 (2003). The plaintiff in *Freeman* argued that this service fee was "'an effective expiration date' in violation of section 1749.5." *Id.* at 663. The court concluded that, regardless "of whether plaintiff's shopping card qualifies as a gift certificate within the meaning of section 1749.5," the card did not violate "section 1749.5 since it d[id] not have an

26

1    expiration date." *Id.* at 666. Specifically, the court held that Section 1749.5 did not apply because,

2    at the time of purchase the gift card did not "have a specified, predetermined expiration date upon

3    which the card loses its value and can no longer be used." *Id.* at 666-67.

4        Plaintiff Cerrato pleads no more in the Amended Complaint than the allegations found

5    legally deficient in *Freeman*. Instead, he alleges only that he lost access to his Crew Credits roughly

6    eight years after he purchased them, when *The Crew* was retired. The theory underlying Plaintiff

7    Cerrato's EFTA claim—that the retirement of *The Crew* operates as an "effective expiration,"—

8    was expressly rejected by the *Freeman* court. *Id.* at 663. Ubisoft did not issue any Crew Credits

9    with a "specified, predetermined expiration date," *id.* and for this and the myriad other reasons set

10   forth above, the EFTA claim must be dismissed.

11       **D.    Plaintiffs Do Not Plausibly Allege A Breach Of Express Or Implied Warranty.**

12       Plaintiffs also fail to plead an actionable breach of an express or implied warranty. Taking

13   the claims in turn, Plaintiffs' express warranty claims are premised on two central allegations: (1)

14   that distributing a physical disk of *The Crew* amounted to an express warranty "that [the] Product

15   was a video game"; and (2) that distributing a physical disk of *The Crew* amounted to an express

16   warranty that Plaintiffs "were obtaining ownership rights over the copy of the Game they

17   purchased." Am. Compl. ¶ 186. "To constitute an actionable express warranty, the statement

18   regarding the product must be specific and measurable." *In re Nexus 6P Prod. Liab. Litig.*, 293 F.

19   Supp. 3d 888, 936 (N.D. Cal. 2018); *see also Butts v. Cibo Vita, Inc.*, No. 2:22-CV-00644, 2023

20   WL 2588012, at *6 (E.D. Cal. Mar. 20, 2023) (requiring that seller make "an affirmation of fact or

21   promise or provide[] a description of its goods[]"). Plaintiffs fail to allege that Ubisoft made any

22   affirmative representations regarding either the metaphysical nature of the disk itself or that

23   Plaintiffs were obtaining absolute ownership. *See, e.g.*, *Leong II*, 2010 WL 1641364, at *10;

24   *Morgan*, 2009 WL 2031765, at *3; *Farley*, 2013 WL 4042434, at *3 n.2. Plaintiffs also provide no

25   rational explanation for the proposition that shutting down *The Crew* means that it no longer exists.

26   And the affirmative representations on the product packaging, combined with Ubisoft's

27   corresponding Terms, inform reasonable consumers that access to *The Crew* and Crew Credits was

28

1    revocable. Plaintiffs' failure to identify specific, measurable statements by Ubisoft that created a

2    warranty doom Plaintiffs' claims of a breach of express warranty.

3        The Amended Complaint does not clearly articulate the origin of Plaintiffs' implied

4    warranty claims: (1) the implied warranty of merchantability or (2) the implied warranty of fitness.

5    The warranty of merchantability provides that "a warranty that the goods shall be merchantable is

6    implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

7    Cal. Com. Code § 2314(1). The warranty of fitness further mandates that "[w]here the seller at the

8    time of contracting has reason to know any particular purpose for which the goods are required and

9    that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is

10   unless excluded or modified under the next section an implied warranty that the goods shall be fit

11   for that purpose." *Id.* § 2315. California also permits independent breach of implied warranty claims

12   under the Song-Beverly Act, providing separate causes of action for the breach of implied warranty

13   of merchantability through Cal. Civ. Code § 1792 and the breach of implied warranty of fitness

14   through Cal. Civ. Code § 1792.1.

15       Plaintiffs' implied warranty claims are based on Ubisoft's alleged breach of an

16   (1) "implied[] warrant[y] that the Product was a video game" when it "shut down the Game's

17   servers, rendering the Game completely destroyed (and no longer an existing video game)," and

18   (2) "implied[] warrant[y] that purchasers of the physical version were obtaining ownership rights

19   over the copy of the Game they purchased." Am. Compl. ¶ 192. The first theory is inactionable for

20   the reasons explained above. Namely, Plaintiffs offer no support for the idea that shutting down

21   *The Crew*'s servers in 2024—over four years after Plaintiffs' purchases and ten years after the

22   game's release—means that *The Crew* was not a video game when Plaintiffs purchased it. *The*

23   *Crew* was a video game when Plaintiffs purchased and played the game, and it remains a video

24   game today, albeit an inoperable one. Moreover, Plaintiffs do not plausibly allege that Ubisoft

25   impliedly warranted that purchasers were obtaining unrestricted ownership rights because Ubisoft

26   included clear language on the packaging and in its Terms stating the exact opposite.

27       Any purported breach of implied warranty of merchantability claim further fails because

28   Plaintiffs do not allege a "fundamental defect that renders the product unfit for its ordinary

purpose." *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014); *see also Kamlade v. LEO Pharma Inc.*, No. 1:21-CV-00522, 2022 WL 358429, at *3 (E.D. Cal. Feb. 7, 2022) ("[A] plaintiff claiming breach of an implied warranty of merchantability must allege and ultimately show that the product 'did not possess even the most basic degree of fitness for ordinary use[.]'"). *The Crew*'s packaging and Ubisoft's corresponding Terms made clear that *The Crew*'s ordinary purpose was to provide consumers with a limited, revocable access to its content. Similarly, Plaintiffs do not plausibly allege a breach of the implied warranty of fitness for a particular purpose because they fail to plausibly allege that *The Crew* was "not reasonably fit for [its] intended purpose, causing injury." *Gomez v. Medtronic PLC*, No. 1:18-CV-01296, 2018 WL 5603609, at *3 (E.D. Cal. Oct. 29, 2018). *The Crew*'s ordinary, intended purpose was to provide consumers with a revocable, limited license to access its content pursuant to the unmistakable warnings on the product packaging and Ubisoft's Terms. Plaintiffs received just that for years, and Ubisoft therefore provided *The Crew* consistent with and fit for its ordinary, advertised purpose.

Other aspects of Ubisoft's Terms also undermine Plaintiffs' breach of warranty claims. "A company may disclaim the implied warranty of merchantability" "so long as the disclaimer 'mention[s] merchantability' and is 'conspicuous.'" *Minkler*, 65 F. Supp. 3d at 819 (quoting Cal. Com. Code § 2316(2)). Likewise, "[a] company may disclaim the implied warranty of fitness" under the California Commercial Code "as long as the disclaimer is in writing and 'conspicuous.'" *Id.* (quoting Cal. Com. Code § 2316(2)). And "to disclaim the implied warranty of merchantability and fitness under the Song-Beverly Act, the seller or manufacturer must provide the buyer with a conspicuous writing attached to the goods which clearly informs the buyer, prior to sale, that the goods are being sold on an 'as is' or 'with all faults' basis." *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-cv-485, 2013 WL 5816410, at *11 (S.D. Cal. Oct. 29, 2013) (quoting Cal. Civ. Code §§ 1792.4(a)(1), (3)). At the time of the relevant sales, Ubisoft's Terms prominently stated in all capital-letter typeface:

> YOU EXPRESSLY ACKNOWLEDGE THAT USE OF THE SERVICES AND GAMES IS AT YOUR OWN RISK. THE SERVICES ARE SUPPLIED ON AN 'AS IS' OR 'AS AVAILABLE' BASIS. UBISOFT, ITS PARENT, SUBSIDIARIES, OTHER AFFILIATED COMPANIES AND UBISOFT'S

29

1
2
3
4

LICENSORS AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND OTHER REPRESENTATIVES WORLDWIDE EXPRESSLY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSES AND NON-INFRINGEMENT.

5
6
7
8
9
10
11

Exhibit B at 11. This disclaimer "state[s] in clear language and capitalized formatting" that Ubisoft disclaims all warranties, including without limitation warranties of merchantability and fitness. *Minkler*, 65 F. Supp. 3d at 819. Ubisoft's Terms also declare conspicuously that its services are supplied "'as is,' thereby excluding all implied warranties under California Law." *Id.* Even assuming that Plaintiffs' breach of warranty claims are not time-barred and that Plaintiffs sufficiently established standing, Plaintiffs' breach of warranty claims are nevertheless implausible on the face of the Amended Complaint and must be dismissed.[10]

12

### CONCLUSION

13
14
15
16
17
18
19
20
21
22
23

Plaintiffs' dissatisfaction with being unable to access a decade-old, discontinued video game and corresponding in-game currency is not a sufficient basis upon which to file a putative class action complaint. Each of Plaintiffs' nine claims are ripe for dismissal because Plaintiffs failed to abide by the applicable statutes of limitation in bringing their claims. Even if Plaintiffs' claims were timely, Plaintiffs also fail to establish standing under Rule 12(b)(1) by way of failing to plausibly allege actual injury and actual and justifiable reliance on any alleged misconduct. Finally, Plaintiffs' claims are further subject to dismissal under Rule 12(b)(6) because Plaintiffs do not—and cannot—plausibly allege any actionable omission, misrepresentation, or untrue or misleading statement given the plain language of *The Crew*'s packaging and Ubisoft's corresponding Terms. Nor can they allege that Ubisoft sold or issued unlawful gift cards or gift certificates with delineated expiration dates. Plaintiffs' Amended Complaint should be dismissed with prejudice.

24
25
26
27
28

[10] The Magnuson-Moss Warranty Act ("MMWA") also allows for breach of express and implied warranty claims. *See Gamez v. Toyota Motor Sales, U.S.A.*, No. 23-CV-01464-DAD-KJN, 2024 WL 86320, at *5 (E.D. Cal. Jan. 8, 2024). However, "the MMWA 'borrows state law causes of action' such as express and implied warranty claims. 'Therefore, the federal claims hinge on the state law warranty claims.'" *Id.* (quoting *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008)). Accordingly, any purported MMWA claims are subject to dismissal for the same reasons that Plaintiffs' breach of express and implied warranty claims fail under California law.

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT

CASE NO. 2:24-cv-03058-DAD-CSK

1

2    DATED:  April 29, 2025                    Respectfully submitted,

3

4                                             By:  /s/ Steven A. Marenberg

5                                             STEVEN A. MARENBERG

6                                             Attorney for Defendant
7                                             UBISOFT, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31