1  STEVEN A. MARENBERG (#101033)
stevenmarenberg@paulhastings.com
2  PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
3  Los Angeles, CA 90067
Telephone: (310) 620-5710

4
RYAN P. PHAIR (*admitted pro hac vice*)
5  CARTER C. SIMPSON (*admitted pr hac vice*)
ryanphair@paulhastings.com
6  cartersimpson@paulhastings.com
PAUL HASTINGS LLP
7  2050 M Street NW
Washington, DC 20036
8  Telephone: (202) 551-1751

9  Attorneys for Defendant
UBISOFT, INC.
10

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  MATTHEW CASSELL, ALAN LIU, and          CASE NO. 2:24-cv-03058-DAD-CSK
ANGEL CERRATO, individually and on
15  behalf of all others similarly situated,      **DEFENDANT UBISOFT, INC.'S
REPLY IN SUPPORT OF ITS MOTION
16              Plaintiffs,                        TO DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT**
17      v.

18  UBISOFT, INC.,                                Judge:    Hon. Dale A. Drozd
Date:     July 21, 2025
19              Defendant.                         Time:     1:30 p.m.
Courtroom: 4, 15th Floor
20
Action Filed:   November 4, 2024
21
JURY TRIAL DEMANDED
22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

**Page**

I.    Plaintiffs Fail to Plead Facts to Establish Standing. ........................................................ 1

II.   Plaintiffs' Claims Are Untimely on the Face of The Amended Complaint. ...................... 4

      A.    Plaintiffs Have Not Adequately Pleaded the Application of the Delayed
             Discovery Rule. ................................................................................................. 5

      B.    Plaintiff Cerrato's EFTA Claim Is Also Time-Barred and Cannot Be
             Salvaged By the Delayed Discovery Rule. ........................................................ 6

III.  Plaintiffs Do Not Plausibly Allege Violations of the CLRA, FAL, and UCL. .................. 7

IV.   Plaintiff Cerrato Does Not Plausibly Allege a Violation of the EFTA or California
      Civil Code § 1749.5. ....................................................................................................... 10

V.    Plaintiffs Do Not Plausibly Allege Any Fraud Claims. .................................................... 12

VI.   Plaintiffs Fail to Plausibly Allege Any Breach of Warranty............................................ 12

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT UBISOFT, INC.'S REPLY IN SUPPORT                    CASE NO. 2:24-cv-03058-DAD-CSK
OF MOTION TO DISMISS AMENDED COMPLAINT

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Andino v. Apple, Inc.*,
No. 2:20-CV-01628, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ................................... 3, 9

5

*Bass v. Facebook, Inc.*,

6

394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................................................ 2

7

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009)................................................................................................. 2

8

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) ........................................................................................ 2

9

*Cody v. SoulCycle, Inc.*,

10

No. CV156457, 2016 WL 4771392 (C.D. Cal. Jan. 11, 2016) .............................................. 10

11

*Cortes v. Univ. & State Emps. Credit Union*,
No. 22-CV-444, 2023 WL 12009972 (S.D. Cal. Mar. 13, 2023) ......................................... 7

12

*Flores v. Gain Capital Group, LLC*,

13

No. CV 17-7873, 2018 WL 6133644 (C.D. Cal. June 20, 2018)........................................... 12

14

*Freeman v. AG Opportunity Zone Fund Prop. Owner, LLC*,
No. 2:24-CV-11256, 2025 WL 1349329 (C.D. Cal. Mar. 31, 2025), *report and
recommendation approved*, No. 2:24-CV-11256, 2025 WL 1344813 (C.D. Cal. May

15

8, 2025) ............................................................................................................................. 3, 4

16

*Gerritsen v. FCA US LLC*,

17

No. CV 19-08268, 2020 WL 3841304 (C.D. Cal. Mar. 3, 2020) ........................................ 3

*Gomez v. JP Morgan Chase Bank, N.A.*,

18

No. 3:22-CV-01773, 2024 WL 2243243 (S.D. Cal. Mar. 26, 2024) ................................. 6, 7

19

*Harvey v. Google Inc.*,
No. 15-CV-03590, 2015 WL 9268125 (N.D. Cal. Dec. 21, 2015) ........................................ 7

20

*Hinojos v. Kohl's Corp.*,

21

718 F.3d 1098 (9th Cir. 2013)............................................................................................... 2

22

*In re Amazon Prime*,
No. 2:22-cv-00401, 2024 WL 1138906 (W.D. Wash. Mar. 15, 2024) .................................. 9

23

*Jablon v. Dean Witter & Co.*,

24

614 F.2d 677 (9th Cir. 1980)................................................................................................. 4

25

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)................................................................................................. 5

26

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......................................................................................................... 2

27

*La Barbera v. Ole Mexican Foods Inc.*,

28

No. EDCV 20-2324, 2023 WL 4162348 (C.D. Cal. May 18, 2023) ..................................... 3

-ii-

*Leong v. Square Enix of America Holdings, Inc.*,
  No. CV09-4484, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 F. App'x
  688 (9th Cir. 2011) ................................................................................................... 5

*Mai v. Supercell Oy*,
  648 F. Supp. 3d 1130 (N.D. Cal. 2023) ...................................................................... 2

*McKay v. Sazerac Co., Inc.*,
  No. 23-CV-00522, 2023 WL 3549515 (N.D. Cal. May 17, 2023) .............................. 8

*McKee v. Audible, Inc.*,
  No. CV 17-1941, 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) .............................. 11

*McTyere v. Apple Inc.*,
  663 F. Supp. 3d 247 (W.D.N.Y. 2023) ....................................................................... 9

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) ......................................................................................... 8

*Park v. Webloyalty.com, Inc.*,
  No. 12CV1380, 2014 WL 4829465 (S.D. Cal. Sept. 29, 2014), *aff'd*, 685 F. App'x 589
  (9th Cir. 2017) .............................................................................................................. 7

*Patterson v. Wells Fargo & Co.*,
  No. 23-CV-03858, 2024 WL 5339479 (N.D. Cal. May 30, 2024) .............................. 7

*Philips v. Ford Motor Co.*,
  No. 14-CV-02989, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ................................ 5

*Rothman v. Equinox Holdings, Inc.*,
  No. 220CV09760, 2021 WL 124682 (C.D. Cal. Jan. 13, 2021) ........................... 11, 12

*Taylor v. Apple, Inc.*,
  No. 20-cv-03906, 2021 WL 11559513 (N.D. Cal. Mar. 19, 2021) ............................ 2

**STATUTES**

15 U.S.C. § 1693 *et seq* ....................................................................................... 6, 7, 10

Cal. Civ. Code § 1749.5 ............................................................................................. 10, 11

-iii-

1    Plaintiffs' Opposition (ECF No. 21) cannot overcome Plaintiffs' lack of standing and

2  inability to plausibly allege the causes of action in their First Amended Complaint (ECF No. 14,

3  the "Amended Complaint"). First, Plaintiffs incorrectly argue that no "benefit of the bargain"

4  exception applies, and that to establish standing Plaintiffs need only allege that they overpaid. But

5  this is not the law. Plaintiffs' claims require concrete economic injury for standing, specifically that

6  Plaintiffs did not receive the full benefit of their bargain. As the Amended Complaint shows,

7  Plaintiffs purchased *The Crew* (and, for Plaintiff Cerrato, Crew Credits) and enjoyed the

8  opportunity to play the game and utilize the features and virtual currencies therein for many years

9  after purchase. Plaintiffs do not contest this fact, nor do they articulate whether and in what way

10  the game maintained any value at the time of its retirement in 2024. Plaintiffs suffered no economic

11  injury, so they lack standing. Plaintiffs' claims are also barred by the applicable statutes of

12  limitations and Plaintiffs' Opposition does nothing to change the fact that, under California law,

13  their claims accrued at the time of purchase and Plaintiffs have failed to plead sufficient facts to

14  invoke the delayed discovery rule.

15    The Opposition also confirms that Plaintiffs cannot identify any affirmatively misleading

16  statement to support their statutory claims under the UCL, FAL, and CLRA. Because they cannot

17  establish the statutory violations, their common law fraud and breach of warranty claims also fail.

18  Plaintiffs' claims are all based on the untenable and unreasonable assumption that they purchased

19  ownership rights when they purchased *The Crew*. The Amended Complaint should be dismissed

20  with prejudice.

21                                    **ARGUMENT**

22  **I.    Plaintiffs Fail to Plead Facts to Establish Standing.**

23    Plaintiffs' alleged injuries are insufficient to establish Article III or statutory standing

24  because Plaintiffs got what they paid for when they purchased *The Crew*, and were able to access

25  and play the game for years. *See* (ECF No. 19 ("Mot.") at 12-16). Still, Plaintiffs argue that those

26  purchases confer standing because no benefit of the bargain exception is applicable here. Opp'n at

27  5-10. To the contrary, the Ninth Circuit has acknowledged that the "benefit of the bargain" defense

28  to standing exists, and "is permissible" when, as here, the alleged injury is not based on a "material"

-1-

1  misrepresentation. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107-08 (9th Cir. 2013) (quoting

2  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332-33 (2011)); *see also Mai v. Supercell Oy*,

3  648 F. Supp. 3d 1130 (N.D. Cal. 2023). Plaintiffs' allegations do not plausibly allege a material

4  misrepresentation that induced Plaintiffs to purchase the game. Nor can they: the game package

5  makes clear that "ONLINE PLAY" is "REQUIRED," and that "UBISOFT MAY CANCEL

6  ACCESS TO ONE OR MORE SPECIFIC ONLINE FEATURES." Plaintiffs conveniently ignore

7  that *The Crew*'s packaging made clear that the game was accessible *only* with an online connection

8  to *The Crew*'s servers, and that such an online connection to *The Crew*'s servers could be shut

9  down by Ubisoft upon prior notice. And as Ubisoft's Motion explains and Plaintiffs' Opposition

10  confirms, Plaintiffs do not allege any dissatisfaction with *The Crew* or that they did not play the

11  game for many years. *See* Mot. at 15-16. Under these conditions, where Plaintiffs received precisely

12  what was marketed to them, they lack standing. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024,

13  1039-40 (N.D. Cal. 2019); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009). Plaintiffs'

14  cited authorities only confirm that the benefit of the bargain exception is available only when there

15  is a "material misrepresentation." Opp'n at 6.

16  Plaintiffs assert *Mai*, 648 F. Supp. 3d at 1130, and *Taylor v. Apple, Inc.*, No. 20-cv-03906,

17  2021 WL 11559513 (N.D. Cal. Mar. 19, 2021), are inapposite because they did not address a

18  scenario, as alleged here, where a defendant "revok[ed] access to something consumers reasonably

19  believed they owned." Opp'n at 8. This is a distinction without a difference. The *Mai* and *Taylor*

20  courts held that the plaintiffs lacked standing because they received the benefit of their bargain, just

21  like the Plaintiffs here.

22  In Plaintiffs' view, by simply alleging an overpayment, they have established Article III

23  standing. But allegations of overpayment are insufficient to establish standing where, as here,

24  plaintiffs "allege that they suffered an injury because they either would not have purchased [the

25  product] or would have paid less for" the product with "conclusory and unsupported" allegations

26  about the product being "worth less." *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th

27  Cir. 2017) (dismissing UCL, CLRA, and FAL claims for lack of standing because "plaintiffs have

28  only made conclusory allegations that their cars are worth less and have not alleged sufficient facts

-2-

1   to establish Article III standing"); *see also Gerritsen v. FCA US LLC*, No. CV 19-08268, 2020 WL

2   3841304, at *1 (C.D. Cal. Mar. 3, 2020) (concluding plaintiffs failed to establish standing to support

3   their breach of warranty, CLRA, and UCL claims where they set forth only "conclusory

4   allegations" that "they suffered an ascertainable loss because of overpayment and diminished value

5   of the [product]") (quotation omitted). Plaintiffs, relying only on their conclusory allegations, argue

6   that there is a difference in value conferred to them by virtue of obtaining only a limited license

7   rather than full ownership rights. *See* Opp'n at 7-8; *see also La Barbera v. Ole Mexican Foods Inc.*,

8   No. EDCV 20-2324, 2023 WL 4162348, at *17 (C.D. Cal. May 18, 2023) ("A price premium theory

9   could be a viable basis upon which to assert standing to challenge the Products, but it would have

10   to be supported by factual allegations, not bare conclusions."). Moreover, even if Plaintiffs

11   sufficiently alleged a "material difference between owning something and receiving a revocable

12   license to use it," Opp'n at 8, the packaging language nevertheless demonstrates that Plaintiffs were

13   warned that they were obtaining only a revocable license to access *The Crew*.

14         Plaintiffs similarly fail to plausibly allege actual reliance, which is a required element to

15   confer statutory standing under the CLRA, UCL, and FAL. The Amended Complaint is devoid of

16   allegations sufficient to establish that *The Crew*'s packaging misrepresented a "material fact," given

17   the clear and conspicuous warnings thereon that Ubisoft could cancel access to "REQUIRED"

18   functions of the game. Plaintiffs' citation to *Andino v. Apple, Inc.* is also distinguishable in this

19   regard. The *Andino* court accepted plaintiffs' allegations that, had they "known the truth [of the

20   alleged misrepresentations], they would not have bought the Digital Content from Defendant or

21   would have paid substantially less for it." No. 2:20-CV-01628, 2021 WL 1549667, at *3 (E.D. Cal.

22   Apr. 20, 2021) (emphasis omitted). The same cannot be true here because the packaging language

23   expressly warned Plaintiffs of the nature of their purchases—that the game required an online

24   connection that could be terminated by Ubisoft upon prior notice.

25         As to Plaintiff Liu, the Court should reject Plaintiff's attempt to modify his deficient actual

26   reliance allegations post-hoc in response to Ubisoft's first Motion. "The Court may decline to

27   accept the truth of allegations in an amended complaint that are contradicted by prior allegations in

28   and documents attached to an earlier complaint." *Freeman v. AG Opportunity Zone Fund Prop.*

-3-

1   *Owner, LLC*, No. 2:24-CV-11256, 2025 WL 1349329, at *5 (C.D. Cal. Mar. 31, 2025), *report and*

2   *recommendation approved*, No. 2:24-CV-11256, 2025 WL 1344813 (C.D. Cal. May 8, 2025)

3   (collecting cases). "[W]here allegations in an amended complaint contradict those in a prior

4   complaint, a district court need not accept the new alleged facts as true[.]" *Id.* Plaintiff Liu suggests

5   that his amended allegations as to when he purchased the spinoff to *The Crew* were warranted based

6   on uncertainty of facts. *See* Opp'n at 9-10. Plaintiffs first contacted Ubisoft in August of 2024

7   regarding their claims, providing Plaintiffs with ample time to verify the ensuing allegations in their

8   pleadings. Moreover, in response to Ubisoft's first Motion to Dismiss, Plaintiff Liu amended his

9   allegations to provide a different date on which he made his purchase, impacting the reliance

10  analysis. Plaintiff Liu's reliance allegations—as originally pleaded—are fatal to his claims. *See*

11  Mot. at 13-14. Plaintiff Liu cannot plausibly allege that he would not have purchased *The Crew*

12  with knowledge that he was obtaining only a limited license because his subsequent knowledge of

13  that fact did not deter him from purchasing a spinoff of *The Crew* after the game was sunset.

14  **II.     Plaintiffs' Claims Are Untimely on the Face of The Amended Complaint.**

15         Plaintiffs concede that statute of limitations arguments are properly raised at the motion to

16  dismiss stage where "the running of the statute is apparent on the face of the complaint." Opp'n at

17  11 (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). That is precisely the

18  case here, despite Plaintiffs' contrary assertions that such arguments are "premature" and

19  "inappropriate for resolution at this stage." *Id.* In the Amended Complaint, Plaintiffs expressly

20  allege purchasing their limited licenses to access *The Crew* and any Crew Credits far beyond the

21  most-forgiving four-year statute of limitation, and corresponding case law dictates that all of

22  Plaintiffs' claims accrued on the date they allege to have purchased the game. *See* Mot. at 5-9; Am.

23  Compl. at ¶¶ 10, 12, 14. Plaintiffs' theory of harm is based on their misperceptions at the time of

24  purchase, *see* Am. Compl. ¶¶ 3, 10, 12-14, and are thus stale by Plaintiffs' own allegations. As for

25  Ubisoft's substantive reliance on *The Crew*'s entire packaging and Ubisoft's Terms of Use

26  ("Terms") in discussing the applicability of the delayed discovery rule, Ubisoft properly presented

27  those exhibits because (1) Plaintiffs included a copy of *The Crew* package in their pleadings; and

28  (2) Plaintiffs' claims necessarily depend on their access and use of *The Crew*, which was governed

-4-
DEFENDANT UBISOFT, INC.'S REPLY IN SUPPORT                    CASE NO. 2:24-cv-03058-DAD-CSK
OF MOTION TO DISMISS AMENDED COMPLAINT

1    by Ubisoft's then-applicable Terms. *See* Mot. at 2-3 nn. 2-3. The Amended Complaint itself

2    includes images showing the back cover of the game and Ubisoft submitted clear, easy-to-read

3    copies of the game packages under the judicial notice doctrine. They likewise could be admitted

4    under the incorporation doctrine. That doctrine "prevents plaintiffs from selecting only portions of

5    documents that support their claims, while omitting portions of those very documents that

6    weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th

7    Cir. 2018). Plaintiffs' protests as to the appropriateness of the game packages should be ignored.

8         **A.    Plaintiffs Have Not Adequately Pleaded the Application of the Delayed
              Discovery Rule.**

9

10    Plaintiffs' argument that the delayed discovery rule saves their claims is not persuasive.

11   Plaintiffs contend that the delayed discovery rule applies here because Plaintiffs were "unable to

12   discover the wrongdoing earlier." Opp'n at 12. But, as explained in Ubisoft's Motion, *The Crew*'s

13   packaging language and Ubisoft's then-applicable Terms explicitly informed consumers that they

14   were obtaining only limited licenses to access *The Crew*. *Leong v. Square Enix of America*

15   *Holdings, Inc.* ("*Leong II*") is not distinguishable as Plaintiffs would have the court believe. *See*

16   No. CV09-4484, 2010 WL 1641364, at *4, *9 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 F. App'x 688

17   (9th Cir. 2011). The *Leong II* court declined to apply the delayed discovery rule because, like here,

18   the plaintiffs had an ability to discover the alleged misrepresentation well before they brought suit.

19   *Id.*

20    It is for this same reason that Plaintiffs' reliance on *Philips v. Ford Motor Co.*, No. 14-CV-

21   02989, 2015 WL 4111448, at *8 (N.D. Cal. July 7, 2015), is misplaced. In *Philips*, the court

22   concluded that plaintiffs' claims were tolled prior to manifestation of a product defect because they

23   "had no reason to suspect wrongdoing, and there was no fact or circumstance to prompt an

24   investigation." *Id.* at *8. Here, Plaintiffs allege that they obtained their physical copies of *The Crew*

25   under the impression that they were obtaining full, irrevocable ownership of the game based on

26   Ubisoft's alleged representations regarding same. Am. Compl. at ¶¶ 10, 12, 14. The unambiguous

27   warnings on *The Crew*'s packaging and corresponding Terms reveal otherwise. These warnings

28   provided Plaintiffs with ample notice that any such understandings or belief that they were

-5-

1   purchasing full ownership rights were inaccurate. Nothing in the Amended Complaint changes this.

2   Plaintiffs therefore fail to demonstrate the applicability of the delayed discovery rule to their claims.

3   Put simply, Plaintiffs did not need to look beyond the plain text of their game packages *or* to

4   Ubisoft's omnipresent Terms to discover that they were obtaining only limited licenses to access

5   *The Crew*, contrary to any supposed representations by Ubisoft or Plaintiffs' own misconceptions

6   suggesting otherwise. Plaintiffs' claims are untimely and the discovery rule does not apply here.

**B.   Plaintiff Cerrato's EFTA Claim Is Also Time-Barred and Cannot Be Salvaged By the Delayed Discovery Rule.**

9   Plaintiff Cerrato's EFTA claim is no more timely. Plaintiff cites the operative EFTA

10   provision, which includes unambiguous language that claims thereunder must be filed "within one

11   year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). But a violation of the

12   EFTA occurs when a defendant "sell[s] or issue[s] a gift certificate, store gift card, or general-use

13   prepaid card that is subject to an expiration date." *See id.* Therefore, an EFTA claim accrues at the

14   time of the sale of the unlawful gift certificate, gift card, or prepaid card. In this case, the sale, by

15   Plaintiff's own allegations, occurred over a year from when Plaintiff Cerrato filed his EFTA claim.

16   *Id.* Plaintiff Cerrato had reason to discover his EFTA claim prior to bringing his claim because

17   Ubisoft's Terms explained that consumers have no property rights in any virtual currency. *See* Mot.

18   at 11-12. And as explained in Ubisoft's Motion, this Court may properly consider those Terms

19   because Plaintiff Cerrato's EFTA claim necessarily depends on them given that his access to and

20   use of *The Crew* and any Crew Credits was governed by those Terms. *See id.* at 2-3 nn. 2-3.[1]

21   Plaintiff Cerrato's EFTA claim is untimely. To overcome this untimeliness, Plaintiff Cerrato tries

22   to invoke the delayed discovery doctrine.

23   Ubisoft relied on *Gomez v. JP Morgan Chase Bank, N.A.* in its opening Motion, which held

24   that "the discovery rule does not apply to the EFTA and the [EFTA] limitations period begins to

25   run on the date the alleged [EFTA] violation actually happened." No. 3:22-CV-01773, 2024 WL

---

[1] Plaintiffs criticize Ubisoft for referencing materials outside of the pleadings like Ubisoft's Terms while simultaneously arguing that Ubisoft has failed to provide sufficient information demonstrating that Plaintiffs were subject to Ubisoft's Terms, which would require Ubisoft to submit additional facts outside the pleadings. *See* Opp'n at 13-15.

-6-

1    2243243, at *5 (S.D. Cal. Mar. 26, 2024). In response, Plaintiff cites cases in which courts have

2    drawn differing conclusions regarding the delayed discovery rule's applicability to the EFTA. *See,*

3    *e.g.*, *Patterson v. Wells Fargo & Co.*, No. 23-CV-03858, 2024 WL 5339479, at *3 (N.D. Cal. May

4    30, 2024) (assessing alleged violation of 15 U.S.C. § 1693i(a)); *Cortes v. Univ. & State Emps.*

5    *Credit Union*, No. 22-CV-444, 2023 WL 12009972, at *9 (S.D. Cal. Mar. 13, 2023) (assessing

6    alleged violation of EFTA regulation requiring "affirmative consent before a financial institution

7    is permitted to assess overdraft fees against customers' accounts"); *Harvey v. Google Inc.*, No. 15-

8    CV-03590, 2015 WL 9268125, at * (N.D. Cal. Dec. 21, 2015) (assessing alleged violation of 15

9    U.S.C. § 1693(e)); *Park v. Webloyalty.com, Inc.*, No. 12CV1380, 2014 WL 4829465, at *3 (S.D.

10   Cal. Sept. 29, 2014), *aff'd*, 685 F. App'x 589 (9th Cir. 2017) (same). Plaintiffs attempts to

11   distinguish *Gomez* on the basis that it dealt with a separate EFTA provision than the one at issue

12   here. It is puzzling that Plaintiff criticizes Ubisoft for relying on *Gomez* given that Plaintiff

13   exclusively cites cases assessing EFTA provisions not at issue in this case.

14          Regardless, Plaintiff's authorities demonstrate, at most, that courts are split regarding

15   whether the discovery rule applies to *different* EFTA provisions not raised by Plaintiff Cerrato.

16   Plaintiff provides no support whatsoever for the proposition that the delayed discovery rule applies

17   to alleged violations of the EFTA's gift certificate provisions. While this Court may find it

18   appropriate to consider the application of the discovery rule to the EFTA claims here, the cases

19   cited by Plaintiff either (1) concluded that the delayed discovery rule ultimately did not save the

20   untimely EFTA claims raised in those lawsuits, or (2) did not contain allegations sufficient to state

21   an EFTA claim, albeit under different provisions. *See Cortes*, 2023 WL 12009972, at *11

22   (dismissing EFTA claim as time barred); *Harvey*, 2015 WL 9268125, at *4 (dismissing EFTA claim

23   as time barred); *Park*, 2014 WL 4829465, at *6 (dismissing EFTA claim as time barred); *Patterson*,

24   2024 WL 5339479, at *3 (dismissing EFTA claim for failure to state a claim).

25   **III.     Plaintiffs Do Not Plausibly Allege Violations of the CLRA, FAL, and UCL.**

26          Like the Amended Complaint, Plaintiffs' Opposition does not identify any actionable

27   misrepresentations, omissions, or untrue statements Ubisoft made when selling physical copies of

28   *The Crew*. Plaintiffs' argument that selling a physical copy of the game represented to consumers

-7-

1  that they were "obtaining the full bundle of traditional ownership rights over that copy of the Game

2  instead of a license" and that "they would be able to play the Game at any time," Opp'n at 17, is

3  outright contradicted by the packaging language underlying the Amended Complaint.

4  Plaintiffs liken their allegations to those in *McKay v. Sazerac Co., Inc.*, No. 23-CV-00522,

5  2023 WL 3549515 (N.D. Cal. May 17, 2023). In *McKay*, the court concluded that the defendant

6  made affirmative misrepresentations when selling Fireball Malt beverages by comparing the

7  Fireball Malt packaging to that of Fireball Whisky packaging and finding that the defendant used

8  certain labeling and marketing techniques to affirmatively mislead consumers into thinking they

9  were purchasing Fireball Whisky. *Id.* at *6-7. The court held that the similarities between the two

10  products made it likely that "[a] reasonable Californian consumer could [] believe that he was

11  buying Fireball Whisky" when he was actually buying Fireball Malt beverages. *Id.* The factors that

12  were key to the court's analysis—the similarly shaped packaging, near-identical labeling, and

13  confusing ingredient list—are not present here. There is no similar product-to-product analysis at

14  issue here. *McKay* therefore does not control the court's decision here, as Plaintiffs suggest. Opp'n

15  at 18-19. Rather, *The Crew*'s packaging contains clear and conspicuous indications that consumers

16  were obtaining revocable access to the game's content. Considering "all the information available

17  to consumers and the context in which that information is provided and used" leads to only one

18  conclusion at the motion to dismiss stage: Plaintiffs can point to no affirmative representations by

19  Ubisoft that consumers were obtaining unfettered ownership of *The Crew*. *McKay*, 2023 WL

20  3549515, at *7 (citing *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021)). Rather, the

21  affirmative representations contained on *The Crew*'s packaging and reinforced in Ubisoft's Terms

22  make clear to consumers that there were obtaining only a limited license to access *The Crew*.

23  As explained above and in Ubisoft's Motion, the game packaging warned consumers that

24  Ubisoft could sunset *The Crew* entirely because it referenced Ubisoft's ability to shutdown online

25  features of the game that the packaging states were "REQUIRED" to access the game. Plaintiffs'

26  attempt to cling to the statement that the game supported "'1 PLAYER' functionality" is of no

27  consequence. Opp'n at 7, 17. Plaintiffs fail to plausibly allege that Ubisoft represented that such

28  one player functionality would be supported *offline*, especially considering *The Crew*'s packaging

-8-

1   language indicating that "ONLINE PLAY" was "REQUIRED." Mot. at 2. Ubisoft could not have

2   affirmatively misled consumers into believing that there is an offline portion of the game given that

3   Ubisoft stated explicitly on the packaging that online play was required. Plaintiffs' allegation that

4   "video games in single-player mode do not" traditionally "require an internet connection," Opp'n

5   at 17, is a generalization and cannot be given any weight given that *The Crew*'s packaging states

6   that such an online connection was, in fact, required to play.

7           Plaintiffs' CLRA, UCL, and FAL claims are further subject to dismissal because the

8   Amended Complaint does not plausibly allege that Plaintiffs' reliance on Ubisoft's supposed

9   misrepresentations or omissions satisfies the reasonable consumer standard. Plaintiffs' citations to

10  *Andino*, *McTyere v. Apple, Inc.*, and *In re Amazon Prime* on this point are unpersuasive. Those

11  cases all center around allegations that use of the word "buy" regarding digital content could be

12  misleading to reasonable consumers based on their general understanding of the word "buy," which

13  is distinct from the case *sub judice*. *E.g.*, *Andino*, 2021 WL 1549667, at *4; *McTyere*, 663 F. Supp.

14  3d 247, 254-55 (W.D.N.Y. 2023); *In re Amazon Prime*, No. 2:22-cv-00401, 2024 WL 1138906, at

15  *4 (W.D. Wash. Mar. 15, 2024). Plaintiffs allege that reasonable consumers would be misled into

16  thinking that they were obtaining full ownership of *The Crew* based on Ubisoft's sale of a physical

17  product, combined with its packaging language. *See* Opp'n at 21-26. But there is a critical flaw in

18  the Amended Complaint that was not present in any of the above three cases: *The Crew*'s

19  packaging, which Plaintiffs submitted in support of their Amended Complaint, clearly states that

20  Ubisoft can revoke access to the game upon prior notice, thus indicating that purchasers were

21  obtaining a limited license. Unlike *Andino*, *McTyere*, and *Amazon Prime*, the Amended Complaint

22  here is not based solely on allegations regarding consumers' subjective understanding of certain

23  advertising language in the context of digital purchases. The relevant product labels contradict any

24  consumer's belief that one was obtaining full ownership of *The Crew* when purchasing their

25  physical copies. Ubisoft informed consumers that (1) the game necessarily required online

26  connectivity to function; (2) Ubisoft could terminate such online connectivity; and (3) further for

27

28

DEFENDANT UBISOFT, INC.'S REPLY IN SUPPORT                    CASE NO. 2:24-cv-03058-DAD-CSK
OF MOTION TO DISMISS AMENDED COMPLAINT

1    PlayStation users, accessing the game was "subject to" a license. Plaintiffs' allegations cannot

2    satisfy the reasonable consumer standard.[2]

3    **IV.    Plaintiff Cerrato Does Not Plausibly Allege a Violation of the EFTA or California**

4    **Civil Code § 1749.5.**

5         Next, Plaintiff Cerrato argues that his EFTA claim—and his related claimed violation of

6    California Civil Code § 1749.5—should survive because he sufficiently alleges that Crew Credits

7    constitute "both 'gift certificates' and 'store gift cards' under [the EFTA]." Opp'n at 34. In doing

8    so, Plaintiff relies on *Cody v. SoulCycle, Inc.*, which is distinguishable. In *Cody*, a plaintiff alleged

9    that the defendant's provision of "Series Certificates," which permitted individuals to attend

10   exercise classes, constituted unlawful gift certificates because the individual certificates expired

11   before she could redeem them. No. CV156457, 2016 WL 4771392, at *1-2 (C.D. Cal. Jan. 11,

12   2016). But the plaintiff alleged a crucial factual allegation that is not present here: the certificates

13   were sold with a delineated or otherwise clearly communicated expiration date. *See id.* at *1 ("[A]

14   Series Certificate costing $30 that can be redeemed for one class expires thirty days after purchase,

15   while a Certificate costing $3,500 that can be redeemed for fifty classes expires twelve months after

16   purchase."). Thus, nothing in *Cody* changes the fact that Plaintiff Cerrato's EFTA claim is

17   nevertheless deficient because he fails to allege that Crew Credits were sold with a delineated

18   expiration date as opposed to them being terminated by virtue of *The Crew* ceasing to function.

19   Plaintiff also fails to counter that the EFTA's exclusion provision applies here given that Plaintiff

20   pleads no facts whatsoever indicating that Crew Credits were "marketed or labeled as a gift card or

21   gift certificate," 15 U.S.C. § 1693*l*-1(a)(2)(D)(ii), and in fact, Plaintiff concedes that Crew Credit

22   purchases are not reloadable. *See* Mot. at 25-27.

23   _____

24   [2] Plaintiffs also assert that Ubisoft "misconstrues the background information Plaintiffs' counsel
     provided about video games and how they work"—which further demonstrated Plaintiffs' inability

25   to satisfy the reasonable consumer standard—because "Plaintiffs' counsel provided this
     background information so that the Court could understand the issue at hand precisely because it is

26   no intuitive information." Opp'n at 24. But Plaintiffs' counsel cannot testify to certain facts in a
     pleading while advancing other allegations regarding Plaintiffs' personal experiences. In other

27   words, the allegations must necessarily be those of *Plaintiffs*, based on their own personal
     knowledge. Plaintiffs' counsel cannot later disavow them by characterizing them as amorphous

28   general knowledge not attributable to the named Plaintiffs specifically.

-10-

1    Plaintiff Cerrato attempts to argue that he is not required to plead that Crew Credits were

2    issued or sold with a delineated expiration date based on *McKee v. Audible, Inc.*, No. CV 17-1941,

3    2017 WL 7388530, at \*1 (C.D. Cal. Oct. 26, 2017). But *McKee* involved a termination of

4    "Membership Credits" that could be used to obtain audio content where the individual plaintiffs

5    alleged that their credits were subject to delineated expiration dates or other express warnings that

6    the credits would expire. *See id.* at \*12 (one plaintiff alleged that he "saw that his remaining credits

7    would expire immediately without a refund if he completed his cancellation"); *id.* at \*13 (other

8    plaintiff alleged that defendant issued him "twelve prepaid Gift Credits, which were set to expire

9    eighteen months later"). In fact, the *McKee* court expressly noted that the credits at issue allegedly

10   "violate[d] federal and California gift card/certificate laws *because the credits [were] designed to*

11   *expire before five years*," *id.* at \*15 (emphasis added), which is not the case here given that Plaintiff

12   Cerrato alleges purchasing Crew Credits in 2017 that went unused for upwards of eight years. *See*

13   Am. Compl. ¶ 14. The allegation of an expiration date was central to the court's denial of the motion

14   to dismiss the EFTA claims in *McKee*. *See McKee*, 2017 WL 7388530, at \*18 ("[Plaintiff] alleges

15   the violation harmed him because he purchased or received one or more Membership Credits *that*

16   *expired earlier than five years after the credit was issued* . . . and he paid more for each credit than

17   he would have paid if he had known the credits were designed to expire *automatically within*

18   *months*.") (emphasis added).

19   The only other case Plaintiff Cerrato cites in defense of his EFTA claim, *Rothman v.*

20   *Equinox Holdings, Inc.*, similarly included express allegations that the alleged unlawful gift cards

21   were issued with delineated expiration dates. *See* No. 220CV09760, 2021 WL 124682, at \*2 (C.D.

22   Cal. Jan. 13, 2021) (alleging that defendant issued gift cards on June 16, 2020, that "carried an

23   expiration date of November 19, 2020"); *id.* at \*7 ("The complaint alleges that plaintiff's 'gift card'

24   carried an expiration date of November 19, 2020—a date which has now passed."). In sum, Plaintiff

25   Cerrato was required to plead that his Crew Credits were subject to a delineated expiration date to

26   state a claim under the EFTA and California Civil Code § 1749.5. Because he failed to do so, his

27   EFTA claim is subject to dismissal.

28

-11-

**V.    Plaintiffs Do Not Plausibly Allege Any Fraud Claims.**

Plaintiffs urge the Court not to dismiss their claims sounding in fraud for the same reasons that they contest dismissal of their statutory claims. Opp'n at 26-27. Because Plaintiffs cannot maintain causes of action under the CLRA, UCL, or FAL for the reasons explained above and in Ubisoft's Motion, Plaintiffs' fraud claims similarly fail. Plaintiffs' additional argument is that *Flores v. Gain Capital Group, LLC*, a case cited by Ubisoft in its opening motion, does not counsel that at least one of Plaintiffs' three duplicative fraud claims should be dismissed. *See* Opp'n at 26. Plaintiffs, however, limit their discussion of *Flores* to the court's analysis on the fraudulent solicitation claim, which was ultimately dismissed. No. CV 17-7873, 2018 WL 6133644, at *5-6 (C.D. Cal. June 20, 2018). But the *Flores* court also, *sua sponte*, struck the plaintiffs' fraud claim as "duplicative" of their fraudulent inducement, concealment, and intentional misrepresentation claims and advised that a court cannot permit a plaintiff to bring "at least two causes of action that arise from the same conduct, and [] seek the same relief for the same harm." *Id.* at *6. The same is true of Plaintiffs' fraud claims here. Plaintiffs' duplicative fraud, fraudulent inducement, and fraudulent misrepresentation claims should be dismissed, or in the alternative, stricken.

**VI.    Plaintiffs Fail to Plausibly Allege Any Breach of Warranty.**

Finally, Plaintiffs contend that their warranty claims should survive dismissal for two, equally uncompelling reasons. First, as to their express warranty claims, Plaintiffs argue that stating a claim under California consumer protection statutes "is sufficient to state a claim for express warranty" and that because they have adequately pleaded their FAL, UCL, and CAL claims, their express warranty claims can withstand a motion to dismiss. *See* Opp'n at 29. Second, Plaintiffs now clarify that they are asserting such claims based on Ubisoft supposedly selling *The Crew* in non-conformity with the "promises or affirmations of fact on the packaging of the product" (as opposed to alleging that *The Crew* was not fit for its ordinary purpose). *Id.* at 29-30. Plaintiffs further assert that, because they are proceeding under this theory, their implied warranty claim rises and falls with their express warranty claim. *Id.* For the reasons explained above and in Ubisoft's Motion, Plaintiffs have failed to plausibly allege violations of the UCL, FAL, or CLRA, so their warranty claims are doomed for the same reasons. Plaintiffs have not established that Ubisoft made

-12-

1   any promises or affirmative representations that Plaintiffs were obtaining ownership of *The Crew*

2   in perpetuity. To the contrary, the product packaging presented in the Amended Complaint

3   highlights that Ubisoft affirmatively represented to consumers that they were obtaining access to

4   *The Crew* subject to Ubisoft's decision to maintain online connectivity for the game. *See* Mot. at

5   27-30. Both of Plaintiffs' breach of warranty claims should be dismissed.

6   ## CONCLUSION

7       Plaintiffs do not have standing to assert their nine causes of action and those causes of action

8   are also time barred. Plaintiffs have further failed to adequately plead violations of the CLRA, FAL,

9   UCL, or EFTA, and common law claims of fraud or breach of warranty. Accordingly, the Court

10   should grant Ubisoft's Motion to Dismiss with prejudice.

11

12   DATED: June 10, 2025                                    Respectfully submitted,

13

14

15                                                          By:  /s/ *Steven A. Marenberg*

16                                                          STEVEN A. MARENBERG

17                                                          Attorney for Defendant

18                                                          UBISOFT, INC.

19

20

21

22

23

24

25

26

27

28

DEFENDANT UBISOFT, INC.'S REPLY IN SUPPORT                CASE NO. 2:24-cv-03058-DAD-CSK
OF MOTION TO DISMISS AMENDED COMPLAINT